2021 IL App (2d) 180781-U
No. 2-18-0781
Order filed March 23, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 99-CF-1454 |
| CHRISTOPHER MARQUEZ, | ) ) | Honorable Rosemary Collins, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant showed neither cause nor prejudice to justify the filing of a successive postconviction petition alleging that his sentence of 50 years' imprisonment, imposed for first-degree murder when he was 18 years old, violated the proportionate penalties clause of the Illinois Constitution because the trial court did not adequately consider his youth and rehabilitative potential. Defendant made the equivalent sentencing claim in the underlying proceedings and it was rejected; though he relies on subsequent case law, the legal basis for his current claim existed when he made it previously.

¶ 2    Defendant, Christopher Marquez, appeals the trial court's order denying him leave to file

a successive postconviction petition. He contends that he established both cause and prejudice for

failing to raise the issue sooner, because (1) the law on which his claim is based did not exist when

he filed his initial petition and (2) this new law shows that the trial court erred in sentencing him. Because the legal basis for defendant's claim existed when he filed his initial petition, and he merely cites additional authority in support of that claim, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Following a 1998 jury trial, defendant was convicted of first-degree murder (720 ILCS 5/9-1(a)(2) (West 1998)) in the shooting death of a rival gang member, Travis Johnson. At trial, defendant, who was 18 at the time of the offense, admitted shooting Johnson but asserted that he acted in self-defense. The jury was instructed on self-defense and second-degree murder but found defendant guilty of first-degree murder.

¶ 5     The trial court sentenced defendant to 50 years' imprisonment. The presentence investigation report (PSI) showed that defendant had convictions for retail theft, operating an uninsured vehicle, having an expired driver's license, domestic battery, and underage drinking. Defendant refused to authorize the release of his school and mental-health records, but several police officers testified about prior incidents in which defendant was involved.

¶ 6     Defendant moved to reconsider the sentence, arguing that the court had failed to consider his youth and rehabilitative potential. The court denied the motion, stating that it had considered defendant's youth and rehabilitative potential when it declined to impose the maximum sentence.

¶ 7     On direct appeal in 2000, this court affirmed the conviction, rejecting defendant's argument that the trial court erred in refusing the jury's request for a definition of "imminent" despite defense counsel's asking the court to deny the request. *People v. Marquez*, No. 2-00-0497 (2001) (unpublished order under Supreme Court Rule 23).

¶ 8     In 2002, defendant filed a postconviction petition in which he raised several claims, including that appellate counsel was ineffective for failing to raise various issues, such as that his

sentence was excessive. The trial court appointed counsel. Counsel argued that it was unreasonable for appellate counsel not to have questioned defendant's sentence as being at the higher end of the range for a young defendant with no prior felony convictions. The trial court granted the State's motion to dismiss the petition, and this court affirmed. *People v. Marquez*, No. 2-03-1357 (2005) (unpublished order under Supreme Court Rule 23).

¶ 9    In 2018, defendant filed a motion for leave to file a successive postconviction petition. In it, he argued that his 50-year discretionary sentence violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He contended that under *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. House*, 2015 IL App (1st) 110580, and *People v. Harris*, 2016 IL App (1st) 141744, imposing a *de facto* life sentence on an 18-year-old was unconstitutional where the sentence failed to consider the hallmark features of youth as now required by the United States Supreme Court and the Illinois Appellate Court. Defendant alleged cause for failing to raise the claim earlier in that the claim relied on law that did not exist at the time of his direct appeal and initial postconviction petition. Defendant alleged prejudice in that the court failed to consider his youth "through the lens of the new developments in science." The trial court denied the motion, and defendant timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11    Defendant contends that the trial court erred by not allowing him to file his successive petition. He argues that the new petition is based on law that did not exist when he filed his initial petition and that this new law shows that the trial court did not adequately consider his youth and rehabilitative potential when it imposed his sentence.

¶ 12    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) offers a procedure by which a defendant may assert that his conviction was based on a substantial denial of his rights under the federal or state constitutions or both.  725 ILCS 5/122-1(a)(1) (West 2018). The Act contemplates the filing of a single petition.  725 ILCS 5/122-3 (West 2018).  Because successive petitions impede the finality of criminal litigation, the statutory bar to multiple petitions will be relaxed only when fundamental fairness so requires.  *People v. Holman*, 2017 IL 120655, ¶ 25.

¶ 13    Generally, two instances qualify: when a defendant raises a claim of actual innocence or when he satisfies the cause-and-prejudice test.  *Id.* ¶ 26.  To establish cause, a defendant must show some objective factor external to the defense that impeded his ability to raise the claim in the initial postconviction proceeding.  *Id.*  To establish prejudice, a defendant must show that the claimed constitutional error so infected the proceeding that the result violated due process.  *Id.*  We review *de novo* the denial of leave to file a successive petition.  *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 14    Defendant cites *Miller v. Alabama*, 567 U.S. 460 (2012), which held that a mandatory sentence of life without parole for a defendant under the age of 18 violated the eighth amendment. However, he appears to have abandoned on appeal any claim under the eighth amendment and proceeds solely under the proportionate penalties clause, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."  Ill. Const.1970, art. I, § 11.  While acknowledging that his case does not fall within the "literal parameters" of *Miller*, which dealt only with a mandatory life sentence imposed on a juvenile, he contends that "*Miller* and its progeny have prompted a re-evaluation of the constitutional limitations of *young adult* sentences under the Illinois Proportionate Penalties Clause."  (Emphasis in original.)

¶ 15    Under *Miller*, a juvenile defendant may be sentenced to life imprisonment if the trial court finds that the defendant's conduct showed "irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *People v. Holman*, 2017 IL 120655, ¶ 46. The court must first consider the defendant's youth and its attendant characteristics, which include the juvenile defendant's (1) "chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences;" (2) "family and home environment;" (3) "degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him;" (4) "incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys;" and (5) "prospects for rehabilitation." *Id.* (citing *Miller*, 567 U.S. at 477-78).

¶ 16    As further evidence of this emerging trend, defendant cites *People v. House*, 2015 IL App (1st) 110580, *vacated and remanded*, *People v. House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order); following remand, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020); and *People v. Harris*, 2016 IL App (1st) 141744, *rev'd on other grounds,* 2018 IL 121932. In *House*, the First District held that a mandatory life sentence for a 19-year-old defendant found guilty by accountability violated the proportionate penalties clause. *House*, 2015 IL App (1st) 110580, ¶¶ 100-101. In *Harris*, the court extended its holding in *House* to a 76-year sentence imposed on an 18-year-old who pulled the trigger. *Harris*, 2016 IL App (1st) 141744, ¶¶ 58-69.

¶ 17    Defendant contends that these authorities postdate his initial postconviction petition, establishing cause for failing to raise the argument there. He contends that he also established prejudice because had the court considered the factors identified in these cases, it likely would have imposed a shorter sentence.

¶ 18     In *People v. LaPointe*, 2018 IL App (2d) 160903, we rejected an argument nearly identical to defendant's.  In 1978, the defendant was sentenced to life imprisonment for a murder he committed when he was 18 years old.  The supreme court upheld the sentence.  *People v. La Pointe*, 88 Ill. 2d 482, 492-93 (1981).

¶ 19     After numerous collateral challenges to his conviction and sentence, defendant in 2016 filed a petition for leave to file a successive postconviction petition.  In it, he alleged " 'that Eighth Amendment principles, as set forth in *Miller v. Alabama*, [567 U.S. 460] (2012), should be applied to [defendant], who turned 18 only 37 days before the offense in question here, and where the evidence shows he was not a mature adult.' "  *LaPointe*, 2018 IL App (2d) 160903, ¶ 19.

¶ 20     The trial court denied leave to file the petition, and we affirmed.  We first noted, as had the trial court, that *Miller* expressly applied only to juveniles.  We further rejected the defendant's contention that *Miller* did not create a bright-line rule excluding anyone over that age.  *Id.* ¶ 37.

¶ 21     The defendant in *LaPointe* raised claims that his sentence was unconstitutional under both the eighth amendment and the proportionate penalties clause.  We held that he did not show cause or prejudice regarding either claim.  Defendant here has abandoned on appeal his eighth amendment claim; therefore, we focus on *LaPointe*'s discussion of the proportionate penalties claim.

¶ 22     Regarding cause, we held that LaPointe's claim under the proportionate penalties clause could have been raised in his initial postconviction petition, given that the clause "was very much in existence then, and the historical fact on which his claim rests—his youth at the time of the offense—was known to all concerned."  *LaPointe*, 2018 IL App (2d) 160903, ¶ 55.  We further noted that the underlying proposition that a defendant's youth is highly relevant in setting the penalty for his crime was not novel and that the defendant had cited a 19th-century case for the

proposition that " '[t]he habits and characters' " of minors " 'are, presumably, to a large extent as yet unformed and unsettled.' " *Id.* (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894)). We concluded that "the materials that defendant needed to assemble an argument that his sentence was unconstitutionally severe in light of his youth were already available when he filed his first postconviction petition." *Id.* Further, the defendant had contended in his direct appeal that his sentence was an abuse of discretion in light of the goal of rehabilitation that the clause commands courts to consider. *Id.*

¶ 23    We further explained as follows:

"*Miller'*s nonexistence did not prevent defendant from contending that the trial court's alleged failure to consider his youth as a factor in mitigation violated the proportionate-penalties clause. *Miller'*s nonexistence as of 2002 merely deprived defendant of some helpful support for that claim. Surely, defendant's contention that this created 'cause' proves too much. If the acquisition of new scientific knowledge to support an already viable claim were all that a defendant needed to show in order to raise the claim years late, then the 'cause' requirement of section 122-1(f) would be a weak threshold indeed. It is one thing to hold, as the Court did, that a substantive rule of law applies retroactively to a case that has completed the direct-appeal process. [Citation.] It is quite another to hold that everything written in support of that new rule also applies retroactively and thus requires reopening a judgment that did not even implicate the new rule." *Id.* ¶ 59.

¶ 24    We also concluded that the failure to raise the claim earlier did not prejudice the defendant, because the claim lacked merit anyway. *Id.* ¶ 60. We initially questioned whether the defendant's claim was a constitutional one at all. Relief under the Act is limited to *constitutional* claims. 725

ILCS 5/122-1(a)(1) (West 2018). The defendant's claim, however, amounted to nothing more than a contention that the trial court had "ignored the factors of youth and rehabilitative potential that the clause required it to consider." *LaPointe*, 2018 IL App (2d), ¶ 61. We further noted that the substance of the defendant's claim had been rejected on direct appeal. *Id.* ¶ 63.

¶ 25    We distinguished *House* and *Harris*, which the defendant cited in support of his claim that his life sentence was unconstitutional. We noted that in *House*, the defendant's participation in the crime was minimal as he merely acted as a lookout. *Id.* ¶ 65. *Harris* was distinguishable, we said, because, unlike LaPointe, the defendant had no criminal record. Further, the trial judge in *Harris* strongly implied that he would have considered a lesser sentence had his discretion not been constrained by mandatory sentencing enhancements. *Id.* ¶ 69.

¶ 26    In *People v. Hoover*, 2019 IL App (2d) 170070, we applied *LaPointe* to the case of a 22-year-old defendant who claimed that his discretionary life sentence for murder violated the proportionate penalties clause. We affirmed the trial court's denial of leave to file a successive postconviction petition, noting that the proportionate penalties claim could have been raised earlier and that the defendant was not prejudiced because his claim, like LaPointe's, merely amounted to a claim that the trial court abused its discretion in sentencing. *Id.* ¶¶ 37-38. In *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 35, we declined to apply *Miller* to a defendant who was 23 when he committed his crimes. We proceeded to hold that, without the force of *Miller*, the defendant's proportionate penalties claim was "little more than a contention that the trial court did not properly weigh his rehabilitative potential." *Id.* ¶ 40.

¶ 27    This case is controlled by *LaPointe*, *Hoover*, and *Suggs*. Defendant was not a juvenile but was legally an adult when he committed the murder. While he did not have a prior felony conviction, he had a substantial history of misdemeanor convictions, juvenile adjudications, and

"antisocial acts" (*LaPointe*, 2018 IL App (2d) 160903, ¶ 69). The trial court stated explicitly that it did consider defendant's youth and rehabilitative potential in sentencing him. Defendant's contention amounts to little more than an argument that the trial court failed to give sufficient weight to those factors, an argument that he could have, and did, raise earlier. Therefore, defendant has established neither cause nor prejudice to justify the filing of his successive postconviction petition.

¶ 28    Defendant argues that *LaPointe* and *Hoover* were wrongly decided. However, he provides little support beyond the arguments that we rejected in those cases. He relies primarily on the appellate court opinions in *House* and *Harris*, which we carefully distinguished. Unlike the defendant in *House*, who was merely a lookout, defendant was the actual shooter. Unlike the defendant in *Harris*, defendant had a significant history of criminal and antisocial behavior. A further distinction is that, unlike in *Harris*, the sentence here was discretionary; the court was not constrained by statute to impose a sentence longer than it wanted.

¶ 29    Defendant extensively cites *People v. Miller*, 202 Ill. 2d 328 (2002), but that case, too, is distinguishable. There, a 15-year-old defendant was convicted in adult court of two counts of murder after he served as a lookout for the actual killers. The trial court declined to impose the statutorily mandated sentence of life imprisonment but instead imposed a 50-year prison term. The supreme court affirmed. Noting that the requirement of a life sentence resulted from the convergence of three separate statutes—the mandatory transfer provision for 15-year-old offenders charged with murder (705 ILCS 405/5-4(6)(a) (West 1996)), the accountability statute (720 ILCS 5/5-2(c) (West 1996)) and the multiple-murder sentencing statute (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1996))—the court held that that penalty, as applied to the 15-year-old defendant without

consideration of his age or individual level of culpability, was unconstitutionally disproportionate. *Miller*, 202 Ill. 2d at 340-41.

¶ 30    Thus, *People v. Miller* involved a 15-year-old defendant who was convicted solely as an accomplice. We note, moreover, that the supreme court approved for that defendant the identical sentence that was imposed on the defendant here.

¶ 31    Defendant argues that cases such as *People v. Miller*, *Miller v. Alabama*, *House*, *Harris*, and *Holman*, are evidence of "evolving standards of decency in sentencing young people." However, this may be, as in *LaPointe*, these cases merely provide additional persuasive authority for defendant's argument that his sentence violates the proportionate penalties clause. That claim required only the existence of the clause itself and the underlying facts of the case. See *LaPointe*, 2018 IL App (2d) 160903, ¶ 55; *Hoover*, 2019 IL App (2d) 170070, ¶ 37. We say "persuasive" authority because none of the cases applies directly to defendant's situation. As in *LaPointe*, arguing that the existence of additional persuasive authority in support of a claim that already existed constitutes cause for raising the claim late surely proves too much. "It is one thing to hold *** that a substantive rule of law applies retroactively ***. [Citation.] It is quite another to hold that everything written in support of that new rule also applies retroactively and thus requires reopening a judgment that did not even implicate the new rule." *LaPointe*, 2018 IL App (2d) 160903, ¶ 59.

¶ 32    Defendant also cites recently enacted statutory provisions as evidence of a trend toward greater consideration of the unique attributes of youth in sentencing for criminal offenses. However, defendant's argument proves too much. Generally, it is the function of the legislature to define offenses and the resulting penalties. *People v. Jones*, 357 Ill. App. 3d 684, 694 (2005). Defendant concedes that none of the enactments specifically applies to him. It is not our function,

then, to disregard the legislature's considered judgment and expand those provisions beyond their intended scope. See *Spear v. Board of Education of North Shore School District. No. 112*, 291 Ill. App. 3d 117, 119 (1997) (a court may not, under guise of construction, depart from a statute's plain meaning or otherwise change the law by supplying omissions, remedying defects, annexing new provisions, substituting different provisions, or adding exceptions, limitations or conditions).

¶ 33                                III. CONCLUSION

¶ 34    We affirm the judgment of the circuit court of Winnebago County.

¶ 35    Affirmed.