2021 IL App (2d) 190695
No. 2-19-0695
Opinion filed December 13, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 83-CF-298 |
| LESTER KEITH HOWARD, a/k/a Keith Lester Howard, | ) ) ) | Honorable |
| | ) | James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Lester Keith Howard, a/k/a Keith Lester Howard, appeals the denial of his motion for leave to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). In 1983, defendant was found guilty of a single count of murder (Ill. Rev. Stat. 1983, ch. 38, ¶ 9-1(a)(1), (a)(2)) and one of home invasion (Ill. Rev. Stat. 1983, ch. 38, ¶ 12-11(a)(2))—offenses committed when he was one month over the age of 20 and during which he stabbed the victim 116 times. The court sentenced defendant to a discretionary term of life imprisonment for the murder conviction, to be served concurrently with an extended-term 60-year sentence for the home invasion conviction. He contends that he satisfied

the cause and prejudice test for filing a successive postconviction petition. See 735 ILCS 5/122-1(f) (West 2018). He claims that he established cause, because recent developments in the law enabled him to raise an as-applied challenge to his life sentence under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He argues that he was prejudiced because he was unable to present evidence at sentencing about the brain development of young adults and its effect on their prospects for rehabilitation. The trial court determined that defendant did not show prejudice, because the case law he relied on concerned mandatory sentences, while his life sentence was discretionary. We hold that defendant did not show either cause or prejudice. Accordingly, we affirm.

¶ 2                                I. BACKGROUND

¶ 3     In 1983, defendant was convicted of murdering his sister-in-law, Bridgett Howard. The evidence at trial disclosed that defendant stabbed Bridgett to death in her home on February 16, 1983. Her death resulted from more than 116 knife wounds. A bloody "buck knife" was recovered near the crime scene, and a pathologist testified that the knife could have caused the wounds.

¶ 4     The evidence showed that there had been arguments between defendant and his brother, Freddie Howard, before Bridgett's death. Defendant had lived in a garage apartment rented by Gina Grieger. The apartment was attached to Freddie's house. In late January 1983, during an argument in the apartment, defendant threatened to kill Freddie and produced a gun. Freddie told defendant to leave the apartment, and defendant apologized. They argued again a week later, and Freddie ordered defendant not to go near his house when Freddie was not home. A few days later, Freddie found defendant in the apartment and ordered him to leave.

¶ 5     Freddie discovered Bridgett's body in the bedroom of their home around 2 a.m. on February 16, 1983. When police arrested defendant later that day, officers noticed fresh cuts on

his index finger. Hairs recovered from the bedroom matched defendant's hair, and a shoe print on the bedspread matched one of defendant's shoes. Blood samples from the murder scene were tested and compared with blood samples of defendant and two other men, Ricky Belcher and Alvin Foxworth. Most of the tests were inconclusive, but the results for serum haptoglobin on some items were consistent with the blood of both defendant and Belcher. An expert in blood classification testified that 50% of the population of defendant's race would have the same type of haptoglobin as does defendant and as was found at the crime scene.

¶ 6       Witnesses who saw defendant at 8:30 a.m. on February 16, 1983, described him as appearing nervous and said that they observed a blood stain on the collar of his jacket. Another witness testified that she saw defendant on the street in the rain at about 8:30 a.m. on February 16, dressed only in a T-shirt and slacks. When she asked why he was dressed that way in the rain, defendant replied that he was using a nearby laundromat. Henry Jones testified that he had talked with defendant at about 12:30 a.m. on February 16. Defendant's speech was rambling; he said that he was on "[s]yrup." Defendant pulled out a "buck knife," chased Jones, and then threw the knife at him. Freddie testified that he saw defendant outside a tavern at 12:45 a.m. on February 16 and offered him a ride, which defendant declined. Defendant denied committing the crime or throwing a knife at Jones.

¶ 7       The State introduced evidence of several statements that defendant made, to the police and others, relating to the murder. Freddie testified that, a week after the murder, defendant told him that Foxworth and Belcher must have entered Freddie's house. Defendant said that he was in the garage apartment when he heard a scream. He ran upstairs to the bedroom in the house but left because he "felt the presence of two other people in the room." Defendant also told Grieger that he had gone to Freddie's house with Foxworth and Belcher but was in the garage apartment when

he heard Bridgett scream. Defendant gave three inconsistent statements to the police, the details of which we need not relate here.

¶ 8    At trial, defendant testified that Foxworth and Belcher gave him a ride to Freddie's house to pick up some of Grieger's jewelry from the garage apartment. When defendant retrieved the jewelry and left the apartment, he noticed that the car was empty and that the door to Freddie's house was open. He went upstairs to Freddie's and Bridgett's bedroom. It was dark and he could not see anything. Sensing someone was there, he ran out. Defendant claimed that he was high on cocaine and intoxicated at the time of the crime. Foxworth testified that he was not at the crime scene, and his girlfriend and her sister testified that they had been with Foxworth that night.

¶ 9    According to the 1983 presentence investigation report, defendant was born in January 1963; he was one month beyond his 20th birthday when he committed the offense. Defendant attended an alternative high school until leaving school in the middle of his senior year. He had had behavioral problems since the fourth grade and had been in a behavioral disorders program since March 1974. In May 1977, his school suspended him for verbally abusing and physically attacking a fellow student, threatening to hit a teacher with a bottle, and throwing a can and rocks at that teacher's car. Defendant acknowledged that his alcoholism caused him serious problems. In that vein, defendant had multiple juvenile system contacts, including (1) a theft adjudication for which he received a term of probation that was later revoked and (2) criminal convictions of robbery and battery. At sentencing, defendant declined to speak in allocution.

¶ 10    The State argued that, because the crime was brutal and heinous, the court had discretion to—and should—impose a life sentence. Defense counsel noted that the court had provided an accountability instruction; thus, the jury could have found him guilty without believing that he was the main perpetrator. Counsel also noted that defendant had made progress in programs while on

juvenile probation but that those programs ceased when his probation ended. Counsel believed that defendant's youth and lack of maturity, as demonstrated in his background, had a role in the offense. Counsel suggested that it was inappropriate to assume that defendant would reoffend.

¶ 11    In its comments before imposing sentence, the trial court stated that it did not doubt that defendant committed the crime: "I frankly have not seen a defendant in some time in a courtroom testifying who was so patently untruthful on the witness stand." The court found that the number of stab wounds showed exceptionally heinous behavior. About defendant's chances of reoffending, the court said:

> "I am absolutely and unequivocally convinced that [defendant] would do it again, not necessarily [to] his sister-in-law, but that his whole background, circumstances, and prior behavior, indicates that he would use force and violence against people, and that if placed in not only these kind of circumstances, but any number of foreseeable circumstances, that [defendant] would use violence, and substantial violence."

¶ 12    The court noted that it considered defendant's "social background." The court commented that the many resources made available to defendant to address his problems, including through the juvenile court system, "did nothing." The court commented on the "consistent increase in the nature of the criminality of [defendant's] acts." The court remarked that, while retribution was an appropriate factor in the imposition of a penalty, the most important factor was the protection of the public. The court noted in potential mitigation the hardship that incarceration might place on defendant's son, but the court determined that "[t]he best thing that [defendant] could do for his son is [to] never be available to him for the rest of his life." The court described defendant as a "cold, vicious person," with "no redeeming factors." He was "a totally dangerous person as far as society [goes]." The court commented, "I would be remiss in my duty and my obligation if the

sentence that this Court gave you afforded you any opportunity to be available to harm the public at any age." The court imposed a life sentence for the murder that would run concurrently to an extended-term, 60-year sentence for the home invasion.

¶ 13 Defendant appealed. He argued, among other things, that his life sentence was excessive because the court at sentencing focused on the nature of the offense and did not consider his rehabilitative potential. We affirmed the life sentence but modified the extended-term sentence for reasons unrelated to defendant's age. *People v. Howard*, 130 Ill. App. 3d 967, 979-81 (1985). Defendant later filed his first postconviction petition, which the court summarily dismissed. We affirmed the dismissal. *People v. Howard*, No. 2-91-1297 (1993) (unpublished order under Illinois Supreme Court Rule 23). Defendant subsequently filed other collateral attacks on his conviction. All those actions were dismissed, and the dismissals were affirmed on appeal.

¶ 14 On June 24, 2019, defendant moved for leave to file a successive postconviction petition. Relying primarily on *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. Harris*, 2018 IL 121932, and *People v. House*, 2019 IL App (1st) 110580-B, defendant alleged that his life sentence was, as applied to him, unconstitutional under both the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because he was only 20 years old when he committed the offense. He argued that he met the cause element to file a successive petition, because his claim was not reasonably available to him under the law as it existed when he filed his initial petition. He further argued that he met the prejudice element because he did not have the chance at sentencing to present mitigating evidence of his youth and its attendant characteristics, which he claimed the trial court was obligated to consider under *Miller*. Elsewhere in his motion, he claimed that the court violated his due process rights because he was denied a chance to present mitigating

evidence, "including his age and his age-related characteristics and the nature of his crimes." He did not cite any other sentencing factors. In his proposed successive petition, defendant asserted that his sentence shocks the moral sense of the community, given his "age, his educational and social background, [and] the accountability instruction and the distinct possibility that that was the basis of the conviction." Defendant attached to his petition the mittimus and the transcript of the trial court's findings at the sentencing hearing.

¶ 15     The trial court denied the motion for leave to file a successive petition. The court agreed that defendant had shown cause based on changes in the law since his conviction. The court noted in particular that there were "substantial changes in *** constitutional jurisprudence relating to the imposition of mandatory life sentences on juvenile offenders." The court determined, however, that defendant did not show how those changes applied to him, and thus he failed to demonstrate prejudice. First, the eighth amendment sentencing protections announced in *Miller* applied only to juveniles, and defendant was 20 years old when he committed the offense. Second, contrary to defendant's assertion, the trial court was presented with and considered mitigating evidence about petitioner's age, social background, and family history. Third, *House*, which applied the proportionate penalties clause, was distinguishable because it dealt with a mandatory life sentence, not a discretionary life sentence like defendant's. Moreover, the defendant in *House* acted only as a lookout during the shooting, while defendant himself brutally murdered Bridgett. (The trial court did not address *Harris*.) Therefore, the court denied defendant leave to file.

¶ 16     Defendant timely appeals.

¶ 17                                    II. ANALYSIS

¶ 18     Defendant contends that the trial court erred in denying him leave to file his successive postconviction petition and present his claim that his sentence violated the proportionate penalties

clause. Defendant does not contest the denial of leave to file with respect to his eighth amendment claim.

¶ 19    The State argues that in *People v. LaPointe*, 2018 IL App (2d) 160903, and *People v. Hoover*, 2019 IL App (2d) 170070, we rejected essentially the same proportionate penalties claim that defendant sought leave to present. We agree with the State and uphold the denial of leave to file.

¶ 20    The Act provides a procedure for defendant to assert that his conviction was based on a substantial denial of his rights under the federal or state constitutions or both. 725 ILCS 5/122-1(a)(1) (West 2018). "The Act contemplates the filing of a single petition ***." *People v. Coleman*, 2013 IL 113307, ¶ 81. Section 122-1(f) of the Act addresses successive postconviction petitions, stating:

> "(f) *** [O]nly one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

¶ 21    The cause-and-prejudice test is a higher standard than the frivolous-or-patently-without-merit standard applied at the first-stage review of a defendant's initial petition. *People v. Smith*, 2014 IL 115946, ¶ 35. To survive first-stage review, a petition need only allege a claim that has an

arguable basis in law or fact. *People v. Tate*, 2012 IL 112214, ¶ 9. A defendant requesting leave to file a successive postconviction petition must make a *prima facie* showing of both cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24. A failure to establish either prong is fatal to the claim. See *Smith*, 2014 IL 115946, ¶ 37. We review *de novo* a trial court's denial of leave to file a successive petition. *LaPointe*, 2018 IL App (2d) 160903, ¶ 33. We may affirm a trial court's judgment on any basis supported by the record. *People v. Smith*, 2013 IL App (4th) 110220, ¶ 21 (citing *People v. Johnson*, 208 Ill. 2d 118, 129 (2003)).

¶ 22    Defendant's motion for leave to file relied on *Miller*, *House*, and *Harris*. We begin with *Miller*. Though defendant has abandoned his claim that *Miller* directly applied at his sentencing, his proportionate penalties claim is based on aspects of the rationale in *Miller*.

¶ 23    In *Miller*, 567 U.S. at 465, 479, the United States Supreme Court held that the eighth amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," or those who were under 18 when they committed the offense. Such a scheme is unconstitutional because it does not allow the sentencer "to consider mitigating circumstances," *i.e.*, the juvenile offenders' "age-related characteristics and the nature of their crimes," before imposing the penalty of life in prison without parole. *Id.* at 489. The reason these circumstances are potentially mitigating lies in the differences between adults and juveniles for purposes of sentencing. See *id.* at 471. First, juveniles are more immature and irresponsible than adults. *Id.* Second, juveniles are more vulnerable than adults to negative influences and pressures from family and peers. *Id.* Third, juveniles are more malleable than adults; their characters are less fixed and their malfeasance is less indicative of irretrievable depravity. *Id.* These differences mitigate juveniles' moral culpability and enhance their prospects for reform. *Id.* at 472-73.

¶ 24 In *People v. Holman*, 2017 IL 120655, ¶ 40, our supreme court considered whether *Miller* applies not only to mandatory life sentences but also to discretionary ones. The court found that *Miller* "contains language that is significantly broader than its core holding" and is not "specific to only mandatory life sentences." *Id.* ¶ 38. The court concluded that "*Miller* applies to discretionary sentences of life without parole for juvenile defendants." *Id.* ¶ 40. This means that "a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46. "The court may make that decision only after considering the defendant's youth and its attendant characteristics." *Id.* In *People v. Buffer*, 2019 IL 122327, ¶¶ 27, 41, the court held that *Miller* applies to both natural life sentences and *de facto* life sentences (those in excess of 40 years).

¶ 25 As noted, defendant does not reassert on appeal that the eighth amendment as construed in *Miller*, *Holman*, and *Buffer* applied at his sentencing. Nor would such a claim have been viable, as *Miller* applies strictly to offenders under 18 at the time of the offense. See *Hoover*, 2019 IL App (2d) 170070, ¶ 30; *LaPointe*, 2018 IL App (2d) 160903, ¶¶ 36-37.

¶ 26 Defendant nevertheless suggests that the values espoused in *Miller* apply to his situation. He argues that, "because he was an emerging adult at the time of the offenses[,] the sentencing considerations created in *Miller* for juveniles should also apply to him based on his circumstances." He cites *Harris* and *House* as exhibiting a post-*Miller* trend in the case law to construe the proportionate penalties clause as mandating special consideration at sentencing for offenders under 21. The clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "A sentence violates the proportionate penalties clause if 'the punishment for the

offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 29 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002)). A claim that a sentence violates the proportionate penalties clause is cognizable in a postconviction petition. See *Harris*, 2018 IL 121932, ¶ 48. The question here, however, is whether defendant showed cause and prejudice with respect to his proportionate penalties claim. On that issue, *Harris* and *House* do not support defendant.

¶ 27    In *Harris*, the defendant was 18 years old at the time of his offenses. *Id.* ¶ 1. He was convicted of first degree murder, attempted first degree murder, and aggravated battery with a firearm and was sentenced to a mandatory minimum aggregate term of 76 years in prison. *Id.* The trial court expressed regret that it lacked discretion in sentencing. *Id.* ¶ 16. The defendant argued on direct appeal that eighth amendment *Miller* protections for juveniles should be extended to "all young adults under the age of 21." *Id.* ¶ 53. The supreme court rejected this "facial challenge" to the statutory scheme of mandatory minimum sentences. *Id.* ¶¶ 53-61. The court reasoned that, while the United States Supreme Court has "unmistakably instructed that youth matters in sentencing," it nevertheless has not "extended its reasoning [(in *Miller*)] to young adults age 18 or over." (Internal quotation marks omitted.) *Id.* ¶ 56.

¶ 28    The defendant in *Harris* also argued that the statutory scheme of mandatory minimum sentences, as applied to him, violated the proportionate penalties clause given the facts of his case, particularly his youth and other mitigating circumstances. *Id.* ¶¶ 36-37. The defendant relied on *Miller*, claiming that its reasoning "should be extended to his specific circumstances as an 18-year-old young adult." *Id.* ¶ 37. He claimed that "the record *** include[d] sufficient information about his personal history to allow the court to consider whether the evolving science on juvenile maturity and brain development relied upon in *Miller* applies to him." *Id.* ¶ 42. The court

disagreed, finding that the record was not "developed sufficiently to address the defendant's claim that *Miller* applies to his particular circumstances." *Id.* ¶ 45. The court continued:

"The record *** includes only basic information about defendant, primarily from the presentence investigation report. An evidentiary hearing was not held, and the trial court did not make any findings on the critical facts needed to determine whether *Miller* applies to defendant as an adult. *** [T]he record here does not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances. Accordingly, defendant's as-applied challenge is premature." *Id.* ¶ 46.

¶ 29 The court noted, however, that the defendant "was not necessarily foreclosed from raising his as-applied challenge in another proceeding," such as a postconviction proceeding. *Id.* ¶ 48.

¶ 30 In *House*, the defendant was found guilty of two counts of first degree murder, based on an accountability theory (he acted as a lookout during the murders), and two counts of aggravated kidnapping. *House*, 2015 IL App (1st) 110580, ¶¶ 3, 82. The defendant, who was 19 years old at the time of the offenses, was sentenced to two consecutive mandatory life sentences for murder and two 30-year prison terms for kidnapping, to run consecutively to the life sentences. *Id.* ¶ 3. While his direct appeal was pending, the defendant filed a postconviction petition raising numerous claims, including a claim that the statute mandating life sentences was unconstitutional as applied to him. *Id.* ¶¶ 31, 34. On appeal from the dismissal of the petition, the First District agreed with the defendant that his sentence violated the proportionate penalties clause. *Id.* ¶ 101. The court observed that, if an adult defendant is found guilty of a triggering offense, the court has no choice but to impose a natural life sentence, no matter how many years the defendant has been an adult. *Id.* ¶ 100 (citing 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2014)). "The lack of discretion

afforded the trial court for the imposition of a mandatory life sentence is especially relevant when the defendant is a young adult, over 18, but still not considered a fully mature adult." *Id.* The court found that, "[g]iven [the] defendant's age, his family background, his actions as a lookout as opposed to being the actual shooter, and lack of any prior violent convictions, *** [the] defendant's mandatory sentence of natural life shocks the moral sense of the community." *Id.* ¶ 101. Accordingly, the statutory mandate of a life sentence was unconstitutional as applied to the defendant. *Id.* ¶ 102.

¶ 31    Both parties petitioned for leave to appeal to the supreme court. The court denied leave but issued a supervisory order directing the appellate court to vacate its decision and reconsider it in light of *Harris*. *People v. House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order). On remand, the First District adhered to its holding that the statute mandating life sentences, as applied to the defendant, violated the proportionate penalties clause. The court remanded for "a new sentencing hearing in which the trial court has the ability to consider the relevant mitigating factors prior to imposing a sentence of such magnitude." *House*, 2019 IL App (1st) 110580-B, ¶ 65. The supreme court reversed and remanded for further postconviction proceedings because the record required further development. *People v. House*, 2021 IL 125124, ¶ 32.

¶ 32    In *LaPointe*, we discussed *Harris* and *House* and rejected an argument nearly identical to defendant's here. In 1978, the defendant in *La Pointe* was sentenced to life imprisonment for a murder he committed when he was 18 years old. The supreme court upheld the sentence. *People v. La Pointe*, 88 Ill. 2d 482, 491-92 (1981). After numerous collateral challenges to his conviction and sentence, the defendant filed in 2016 a motion for leave to file a successive postconviction petition. In the motion, he alleged " 'that Eighth Amendment principles, as set forth in *Miller v. Alabama*, [567 U.S. 460] (2012), should be applied to [the defendant], who turned 18 only 37 days

before the offense in question here, and where the evidence shows he was not a mature adult.' " *LaPointe*, 2018 IL App (2d) 160903, ¶ 19. In the proposed petition, he argued that his sentence was invalid under the eight amendment as construed in *Miller* and the proportionate penalties clause. *Id.* ¶¶ 22-26. The trial court denied leave to file the petition, and we affirmed. *Id.* ¶¶ 29, 70.

¶ 33    First, we held that the defendant showed no prejudice resulting from the eighth amendment claim's omission from his initial postconviction petition, because *Miller*'s holding categorically excluded defendants who were at least 18 at the time of the offense. *Id.* ¶ 47. Second, we held that the defendant showed neither cause nor prejudice as to the proportionate penalties claim. Regarding cause, we held that the defendant could have raised the claim in his initial postconviction petition, given that the proportionate penalties clause "was very much in existence then, and the historical fact on which his claim rests—his youth at the time of the offense—was known to all concerned." *Id.* ¶ 55. We further noted that the underlying proposition that a defendant's youth is highly relevant in setting the penalty for his crime was not novel and that the defendant himself had cited a nineteenth century case for the proposition that " '[t]he habits and characters' " of minors " 'are, presumably, to a large extent as yet unformed and unsettled.' " *Id.* (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894)). We concluded that "the materials that defendant needed to assemble an argument that his sentence was unconstitutionally severe in light of his youth were already available when he filed his first postconviction petition." *Id.* This was so, we stressed, even though *Miller* had not yet been decided:

"*Miller*'s nonexistence did not prevent defendant from contending that the trial court's alleged failure to consider his youth as a factor in mitigation violated the proportionate penalties clause. *Miller*'s nonexistence as of 2002 merely deprived defendant of some helpful support for that claim. Surely, defendant's contention that this created 'cause'

proves too much. If the acquisition of new scientific knowledge to support an already viable claim were all that a defendant needed to show in order to raise the claim years later, then the 'cause' requirement of section 122-1(f) would be a weak threshold indeed. It is one thing to hold, as the Court did, that a substantive rule of law applies retroactively to a case that has completed the direct-appeal process. [Citation.] It is quite another to hold that everything written in support of that new rule also applies retroactively and thus requires reopening a judgment that did not even implicate the new rule." *Id.* ¶ 59.

¶ 34    We also concluded that the failure to raise the proportionate penalties claim earlier did not prejudice the defendant, because the claim lacked merit anyway. *Id.* ¶ 60. We initially questioned whether the defendant's claim was a constitutional one at all. Relief under the Act is limited to constitutional claims. 725 ILCS 5/122-1(a)(1) (West 2018). The defendant's claim, however, amounted to nothing more than a contention that the trial court had "ignored the factors of youth and rehabilitative potential that the clause required it to consider." *LaPointe*, 2018 IL App (2d) 160903, ¶ 61. We further noted that we had previously rejected the substance of the defendant's claim when we affirmed his sentence on direct appeal. Therefore, *res judicata* applied. *Id.* ¶ 63.

¶ 35    We also distinguished *House* and *Harris*, noting that those cases had mitigating factors absent in the case before us. *Id.* ¶¶ 65-69. In *House*, the defendant's participation in the crime was minimal, as he merely acted as a lookout. *Id.* ¶ 65. In *Harris*, the defendant had no criminal record. *Id.* ¶ 69. By contrast, the defendant in *LaPointe* personally committed the murder, with premeditation, and he had a prior felony conviction and a history of other antisocial behavior. *Id.* ¶ 65, 69. Further, the trial judge in *Harris* strongly implied that he would have considered a lesser sentence had mandatory sentencing enhancements not constrained his discretion. *Id.* ¶ 69.

¶ 36    In *Hoover*, 2019 IL App (2d) 170070, we applied *LaPointe*. The defendant in *Hoover* was given a discretionary life sentence for a murder he committed when he was 22 years old. *Id.* ¶¶ 11, 13. We affirmed the trial court's denial of leave to file a successive postconviction petition raising a claim that the defendant's sentence violated the proportionate penalties clause. *Id.* ¶¶ 21, 43. Following the reasoning of *LaPointe*, we noted that the defendant did not show cause, because he claimed in essence that the trial court at sentencing did not properly consider his youth—a contention he could have brought earlier. *Id.* ¶ 37. Further, he did not show prejudice, because (1) his claim was a nonconstitutional claim of sentencing error, (2) the trial court at sentencing did indeed consider his youth and background, (3) his claim was forfeited because he failed to raise it on direct appeal, and (4) the claim had no merit, as the sentence clearly was not disproportionate to the offense. *Id.* ¶¶ 38-42.

¶ 37    In *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 35, we declined to apply *Miller* to a defendant who was 23 when he committed his crimes. We went on to hold that, without the force of *Miller*, the defendant's proportionate penalties claim was "little more than a contention that the trial court did not properly weigh his rehabilitative potential." *Id.* ¶ 40.

¶ 38    Here, under *LaPointe*, *Hoover*, and *Suggs*, defendant has not established cause for failing to raise his proportionate penalties claim in his initial petition under the Act. At that time, not only did the proportionate penalties clause exist, but it was well established that a defendant's youth is relevant to sentencing. See *LaPointe*, 2018 IL App (2d) 160903, ¶ 55; *Hoover*, 2019 IL App (2d) 170070, ¶ 37. Defendant's claim under the clause amounts to little more than an argument that the trial court failed to give sufficient weight to his youth and its attendant circumstances—an argument he could have made decades before.

¶ 39    As we concluded with the proportionate penalties claim in *LaPointe*, neither *Harris* nor *House* establishes cause for defendant's failure to include his proportionate penalties claim in his initial petition. As we stressed in *LaPointe*, the later emergence of additional support for a claim does not in itself establish cause for failing to bring the claim earlier. See *LaPointe*, 2018 IL App (2d) 160903, ¶ 59. Unlike *Miller* itself, neither *Harris* nor *House* put forward a new substantive rule of law. See *People v. Davis*, 2014 IL 115595, ¶ 42 ("In terms of the requisite cause and prejudice of the Post-Conviction Hearing Act, *Miller*'s new substantive rule constitutes 'cause' because it was not available earlier to counsel ***."). Rather, *Harris* and *House* provided additional support by presenting particular factual scenarios to which the courts in those cases applied established constitutional principles. The absence of those decisions did not prevent defendant from alleging in his initial petition that the trial court violated the proportionate penalties clause by failing to consider his youth and its attendant circumstances as factors in mitigation. Notably, the supreme court recently settled this issue in *People v. Dorsey*, 2021 IL 123010, ¶ 73, where it cited *LaPointe* with approval in holding "that *Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause."

¶ 40    We also hold that defendant did not show prejudice. As with the claim in *LaPointe*, the claim defendant purports to be a proportionate penalties claim is not of constitutional dimension. Defendant's argument is not that his sentence for murder is so disproportionate to the offense as to violate the constitution. It is simply that his youth was not adequately considered, which is akin to an abuse-of-discretion argument, not a constitutional argument. Therefore, since the claim is not even cognizable in a postconviction petition, defendant cannot show prejudice. See *People v. White*, 2020 IL App (5th) 170345, ¶ 30 (citing *LaPointe* and *Hoover* for the proposition that "a

trial court's failure to consider a defendant's youth amounts to nothing more than a garden variety claim that the court abused its sentencing discretion" and is not a constitutional claim).

¶ 41    Assuming that the claim were of constitutional scope, it nonetheless has no chance of success, for several reasons. First, defendant faces a procedural bar stemming from our decision in his direct appeal. Defendant claimed on direct appeal that the trial court erred at sentencing in not giving due weight to his rehabilitative potential. We rejected that argument. See *Howard*, 130 Ill. App. 3d at 980. That holding bars defendant from raising the point again or from raising any point that he might have raised but did not. *Holman*, 2017 IL 120655, ¶ 25 ("[I]ssues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are forfeited."). Defendant had all the legal authority necessary to bring his proportionate penalties claim on direct appeal, yet he did not bring it.

¶ 42    Second, procedural bars aside, defendant's claim lacks substantive merit. *Harris* and *House* do not advance defendant's position. The sentences in those cases were of particular concern to the reviewing courts because they were mandatory sentences. Here, by contrast, defendant's sentence was discretionary; the court could tailor the sentence according to the relevant factors and was unconstrained by statute to impose a longer sentence than it might have wanted. See *People v. Marquez*, 2021 IL App (2d) 180781-U, ¶¶ 25-28 (cited as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)).

¶ 43    Also, as with the defendant in *LaPointe*, defendant's background and the nature of his offense distinguish this case from *Harris* and *House*. Defendant has a substantial history of antisocial behavior, culminating in his involvement in an appallingly sadistic stabbing death.

¶ 44   Defendant directs us to nothing that would have persuaded the trial court to impose less than a life sentence. His motion for leave to file relies almost solely on his ability to present evidence of how juveniles' general characteristics and degree of brain development impact their rehabilitative potential. A flat assertion that a 20-year-old's brain is more like that of a person under the age of 18 "is simply insufficient to survive the more exacting standard that would warrant the filing of a successive postconviction petition." *People v. Moore*, 2020 IL App (4th) 190528, ¶ 40. While defendant notes that here, as in *House*, there was an accountability instruction, it is clear that the trial court considered defendant to be the perpetrator while the defendant in *House* was merely a lookout. Further, given the court's remarks about defendant's character and the brutality of the crime, it is questionable whether the sentence would have differed at all had defendant been a juvenile. The court noted at sentencing that it considered defendant's "whole background [and] circumstances." In affirming the sentence on direct appeal, we found that it was "clear" that the trial court "carefully considered all of the statutory factors in mitigation and aggravation before imposing sentence [citation]." *Howard*, 130 Ill. App. 3d at 980. We observed that the trial court "rejected the mitigating factors that defendant's conduct was unlikely to recur or that he was unlikely to commit another crime." *Id.*

¶ 45   Defendant argues that we should follow *People v. Johnson*, 2020 IL App (1st) 171362, ¶ 35. There, a division of the First District held, over dissent, that the trial court erred in denying the defendant leave to file a successive postconviction petition alleging that his life sentence violated the proportionate penalties clause. The court so held even though the defendant was 19 years old at the time of the crime and his sentence was discretionary. *Id.* ¶ 6; see also *People v. Ruiz*, 2020 IL App (1st) 163145 (companion case to *Johnson* also reversing the denial of leave to file a successive postconviction petition in which the defendant, who was 18 years old at the time

of the offense, claimed that his discretionary sentence violated the proportionate penalties clause). Applying *Harris* and *House*, the court held that, while a young adult offender is precluded from bringing an eighth amendment claim under *Miller*, he can nonetheless pursue a claim, under the proportionate penalties clause, that *Miller* protections apply to his specific circumstances. *Johnson*, 2020 IL App (1st) 171362, ¶¶ 15, 17, 27. The court rejected the State's argument that the rationale of *House* applies only to a mandatory life sentence. The court noted that our supreme court "has eliminated the distinction between mandatory and discretionary life sentences when juveniles raise constitutional challenges." *Id.* ¶ 18. Thus, if the defendant could show "that *Miller* applies to him as a young adult, the distinction between mandatory and discretionary sentences evaporates." *Id.* The court found the defendant's "claim that developing brain science may apply to his specific circumstances to be sufficiently supported by the materials attached to his petition—at least, sufficiently supported to warrant further proceedings." *Id.* ¶ 31. Thus, the defendant "made a *prima facie* showing that *Miller* applies to him as a young adult." *Id.* ¶ 34.

¶ 46     We are not persuaded to follow *Johnson*. The defendant in *Johnson* provided significantly greater factual support for his claim to *Miller* protections than defendant provided here. The *Johnson* defendant submitted (1) specific information about (a) his childhood turmoil over his racial identity and (b) his decision, for self-preservation, to associate with gang members and (2) an article about a social science study demonstrating that criminality decreased in young offenders in their early twenties and that brain development is not complete until the age of 25. *Id.* ¶¶ 29-31. By contrast, here, defendant made bare assertions that his age and background were not considered by the trial court.

¶ 47     Most important, however, is that *Johnson* did not refer to *LaPointe* and *Hoover*. We have recently and consistently rejected arguments to reconsider *LaPointe* and *Hoover* and have declined

to follow decisions holding that *Miller* establishes cause to excuse the failure to earlier raise a proportionate penalties claim. See *People v. Hernandez*, 2021 IL App (2d) 190112-U, ¶ 47 (cited as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)); *People v. Bilski*, 2021 IL App (2d) 190779-U, ¶ 26 (cited as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)); see also *Marquez*, 2021 IL App (2d) 180781-U, ¶ 28 (cited as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)) (noting that we previously distinguished *House* and *Harris* in *LaPointe* and *Hoover*). Another recent case of note is *People v. Haines*, 2021 IL App (4th) 190612, ¶ 47, where the Fourth District held that the nonexistence of *Harris* was not cause for the defendant's failure to raise a proportionate penalties claim in his initial postconviction petition. And, as noted, the supreme court recently held in *Dorsey* that *Miller* categorically does not furnish cause for a defendant to raise a claim under the proportionate penalties clause. See *Dorsey*, 2021 IL 1233010, ¶ 73. Thus, we cannot follow *Johnson*.

¶ 48    On a final note, although not necessary to decide this appeal, we suggest that a recent United States Supreme Court case, *Jones v. Mississippi*, 593 U.S. ___, 141 S. Ct. 1307 (2021), calls into question how broadly *Miller* may be applied. See *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 25 (citing *Jones*). In *Nichols*, we noted that *Jones* suggests that "the United States Supreme Court is departing, however slightly, from its position that courts must consider a juvenile's youth before imposing a life sentence." *Id.* (citing *Jones*, 593 U.S. at ___, 141 S. Ct. at 1316). In *Jones*, the Court rejected the defendant's argument that *Miller* forbids a trial court from sentencing a juvenile to natural life in prison unless the court makes a separate factual finding that the defendant is permanently incorrigible or at least provides an on-the-record sentencing explanation with an implicit finding that the defendant is permanently incorrigible. *Jones*, 593 U.S. at ___, 141 S. Ct. at 1313. The Court stated: "In short, *Miller* followed the Court's many death

penalty cases and required that a sentencer consider youth as a mitigating factor when deciding whether to impose a life-without-parole sentence. *Miller did not* require the sentencer to make a separate finding of permanent incorrigibility before imposing such a sentence." (Emphasis added.). *Id.* at ___, 141 S. Ct. at 1316. The dissent in *Jones* suggested that the majority's holding "guts" both *Miller* and *Montgomery. Id.* at ___, 141 S. Ct. at 1328 (Sotomayor, J., dissenting, joined by Breyer and Kagan, JJ.). The dissent accused the majority of reducing *Miller*'s holding to merely a requirement of a discretionary sentencing procedure where youth is considered. *Id.* at ___, 141 S. Ct. at 1328. If that were the extent of *Miller*'s holding, the dissent noted, the case would not be retroactive to cases on collateral review as was held in *Montgomery. Id.* at ___, 141 S. Ct. at 1330. On the other hand, the majority claimed that the dissent sought to unduly broaden *Miller* and *Montgomery. Id.* at ___, 141 S. Ct. at 1321 (majority opinion).

¶ 49    Thus, at a minimum, there is a serious question of the viability of cases, such as *Johnson*, that significantly broaden *Miller* by suggesting that its protections may also apply to defendants over age 18.

¶ 50    Indeed, our supreme court recently addressed *Jones*, stating:

"[In *Jones*], the Court held that the defendant's eighth amendment argument that 'the sentencer must make a finding of permanent incorrigibility' before imposing a discretionary life without parole sentence 'is inconsistent with the Court's precedents.' *Id.* at ___, 141 S. Ct. at 1311. Instead, the Court found that the eighth amendment allows juvenile offenders to be sentenced to life without parole as long as the sentence is not mandatory and the sentencing court had discretion to consider youth and attendant characteristics but that no factfinding by the sentencer is required. *Id.* at ___, 141 S. Ct. at 1314-15. The Court noted that *Miller* and *Montgomery* squarely rejected the idea that the

eighth amendment 'requires more than just a discretionary sentencing procedure' (*id.* at ___, 141 S. Ct. at 1314) and that *Montgomery* stated that ' "*Miller* did not impose a formal factfinding requirement" and that "a finding of fact regarding a child's incorrigibility…is not required." [Citation.]' " *Dorsey*, 2021 IL 123010, ¶ 40.

¶ 51    The court then commented about the viability of its own holdings in light of *Jones*:

"Following the decisions in *Miller* and *Montgomery*, some state courts limited the Supreme Court's holdings in those cases to only *mandatory* life without parole sentences. See *Holman*, 2017 IL 120655, ¶ 40 (collecting cases). This court in *Holman*, however, held that *Miller* and *Montgomery* apply to *discretionary* life without parole sentences as well. *Id.* This holding is questionable in light of *Jones*." (Emphases in original.) *Id.* ¶ 41.

Given the court's comments in *Dorsey*, it is now questionable whether *Miller*'s principles could ever apply to a discretionary life sentence, especially in relation to the proportionate penalties clause.

¶ 52    We conclude that defendant has not established cause and prejudice for failing to raise his proportionate penalties claim in his initial postconviction proceeding.

¶ 53                                 III. CONCLUSION

¶ 54    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 55    Affirmed.

---

**No. 2-19-0695**

---

| | |
|---|---|
| **Cite as:** | *People v. Howard*, 2021 IL App (2d) 190695 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 83-CF-298; the Hon. James K. Booras, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Christopher G. Evers, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Mary Beth Burns, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---