2022 IL App (1st) 170677

FIFTH DIVISION
Order filed: February 4, 2022

No. 1-17-0677

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 24520 |
| | ) | |
| ALTAI THORNTON, | ) | Honorable |
| | ) | Brian Flaherty, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Altai Thornton, appeals from an order of the circuit court of Cook County, dismissing his *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). On appeal, he argues the circuit court committed two errors: (1) it recharacterized his petition brought pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2014)) as a postconviction petition under the Act without properly admonishing him pursuant to *People v. Shellstrom*, 216 Ill. 2d 45 (2005); and (2) it

summarily dismissed his postconviction petition even though he stated arguable claims that his 70-year sentence for a crime that he committed as a juvenile violated both the eighth amendment to the United States Constitution (U.S. Const., amends. VIII, XIV) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11).

¶ 2 On January 10, 2020, this court filed an opinion that did the following: found that the circuit court failed to adequately consider the defendant's youth and attendant circumstances before sentencing him to a *de facto* life sentence for a crime committed when he was a juvenile; reversed the circuit court's dismissal of the defendant's postconviction petition; and remanded the matter to the circuit court with directions to resentence the defendant. *People v. Thornton*, 2020 IL App (1st) 170667. On December 29, 2021, the supreme court entered a supervisory order directing this court to vacate its January 10, 2020 judgment and reconsider its decision in light of the decision in *People v. Dorsey,* 2021 IL 123010. For the reasons that follow, we affirm the judgment of the circuit court dismissing the defendant's *pro se* petition for relief pursuant to the Act.

¶ 3 On March 4, 1999, the defendant entered an open guilty plea to four counts of first-degree murder and one count of aggravated kidnapping, stemming from the abduction and murder of Tommy Glass. In exchange for the defendant's guilty plea, the State agreed to cap its sentencing recommendation at 60 years' imprisonment. Before accepting the defendant's guilty plea, the circuit court admonished him pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997), informing him that "the possible sentences on this case for first degree murder is 20 to 60 years *** [and] [w]ith a showing of cruel and heinous conduct *** an extended term sentence would be from 60 to 100 years, or in [the defendant's] case natural life." The defendant responded that he understood. In response to further questioning by the circuit court, the defendant also

acknowledged that he understood he would give up his right to a jury trial and that his plea was made freely and voluntarily.

¶ 4　The factual basis for the defendant's plea established the following. On December 27, 1994, the defendant, who was 17 years old at the time, and four co-defendants abducted Glass, a member of a rival gang. After binding Glass's arms and legs, the defendant, along with his co-defendants, kicked and beat Glass, struck him over the head with a paint can, pushed his face onto lit stovetop burners, pushed him down a hill toward a canal, weighed down his clothing with rocks, and then held him underwater until he drowned.

¶ 5　At the sentencing hearing, the State presented evidence in aggravation of the defendant's involvement in a subsequent shooting. The State also presented a victim impact statement from Glass's sister. In mitigation, the defendant presented testimony from his mother and sister. In allocution, the defendant apologized and accepted responsibility for his actions.

¶ 6　The circuit court found that the defendant's actions were cruel and heinous and stated that he was "starting down the wrong path at an early, early age." The circuit court then merged the aggravated kidnapping count into the first-degree murder count based on felony kidnapping and sentenced the defendant to four concurrent extended terms of 70 years' imprisonment in the Illinois Department of Corrections (IDOC).

¶ 7　On direct appeal, we reduced the defendant's sentence to concurrent terms of 60 years' imprisonment. *People v. Thornton*, No. 1-99-1045 (unpublished order of November 2, 2000). On May 30, 2002, our supreme court directed us to vacate our order and reconsider our judgment in light of its decision in *People v. Jackson*, 199 Ill. 2d 286 (2002). *People v. Thornton*, 199 Ill. 2d 575 (2002).

¶ 8    On remand to this court, the defendant argued that the circuit court erred by entering convictions and imposing sentences on four counts of first-degree murder when there was only one victim and that his 70-year sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We vacated 3 of the 4 counts of first-degree murder, affirmed the remaining count of first-degree murder, and affirmed the defendant's 70-year sentence. *People v. Thornton*, No. 1-99-1045 (unpublished order under Illinois Supreme Court Rule 23).

¶ 9    On January 19, 2016, the defendant filed a *pro se* "Petition to Vacate Judgment under Section 2-1401(f)." In the petition, the defendant alleged the following: (1) his indictment was void for failing to allege brutal and heinous conduct; (2) his 70-year extended-term sentence violated *Apprendi*; (3) the extended-term sentencing statue, along with several others, were unconstitutional because they did not require the State to charge brutal and heinous conduct; (4) the concurrent and consecutive sentencing statutes violated *Apprendi* and are void *ab initio*; and (5) both his trial and appellate counsel were ineffective. On September 23, 2016, the State filed a motion to dismiss the petition.

¶ 10    On October 7, 2016, the defendant filed a *pro se* "Motion to Recharacterize the Pending 2-1401 Petition as a Post-Conviction Petition" under the Act. On November 4, 2016, during proceedings before the circuit court, the State noted that the defendant had to be admonished pursuant to *Shellstrom* "and then it goes into a Stage 1 determination." Thereafter, the defendant and the circuit court had the following colloquy:

> "COURT: Do you understand if I allow this, this will be your one and only chance to file a post-conviction petition. Do you understand that?

DEFENDANT: I understand. As I was going through it, I was trying to understand the constitutional issues. My whole point was to preserve the constitutional issues that I was trying to raise in my petition, and that's why I raised the 2-1401. So when I found out that I couldn't preserve my constitutional issue, that's why I wanted to characterize it as a post-conviction petition.

COURT: But I just want to let you know if you do characterize it, this is your one and only chance to file a post conviction, and you won't get another chance to do it.

DEFENDANT: All right.

COURT: And so all the issues you're going to raise in your postconviction need to be raised in this one.

DEFENDANT: I understand.

COURT: And so you can't say I'll come back later on and say I forgot to do this.

DEFENDANT: I understand that, yes.

COURT: Okay."

The circuit court granted the defendant's motion.

¶ 11 On December 15, 2016, the defendant filed a "Motion for Leave of Court to File Amended Post-Conviction Petition," in which he sought to add additional claims. The defendant simultaneously filed an "Amended Post-Conviction Petition," containing all of the claims raised in his initial petition, as well as two new allegations. The first new claim alleged that his extended-term sentence violated his due process rights because it was based on facts not alleged in the indictment. The second new claim appears to allege that the defendant's 70-year sentence is a life sentence and asserts, citing to *Miller v. Alabama*, 567 U.S. 460 (2012), that his sentence is

unconstitutional, having been rendered without adequate consideration of his youth and attendant circumstances. The claim makes no specific reference to either the eighth amendment to the United States Constitution or the proportionate penalties clause of the Illinois Constitution.

¶ 12     On January 27, 2017, the circuit court summarily dismissed the defendant's *pro se* amended postconviction petition as frivolous and patently without merit. In so holding, the circuit court found that the sentencing judge informed the defendant that he was eligible for an extended-term sentence based on cruel and heinous conduct. The circuit court noted that the extended-term statute had been repeatedly found constitutional and found the defendant's allegations of ineffective assistance of counsel contradicted by the record. The circuit court stated that the defendant cited to "a lot of cases" in support of a due process claim "and none of the cases show that his due process rights" were violated. The circuit court did not address the defendant's claim that his sentencing hearing violated *Miller*. This appeal followed.

¶ 13     We address first the defendant's contention that the circuit court erred when it recharacterized his section 2-1401 petition as a postconviction petition under the Act without properly admonishing him pursuant to *People v. Shellstrom*, 216 Ill. 2d 45 (2005). He argues that this court must vacate the circuit court's summary dismissal of his recharacterized postconviction petition and remand the matter to the circuit court with directions to administer the complete *Shellstrom* admonishments.

¶ 14     The State argues that the circuit court was not required to admonish the defendant pursuant to *Shellstrom* because it did not recharacterize his motion *sua sponte*, but rather, it granted his request to recharacterize his section 2-1401 petition as a postconviction petition under the Act. The State also asserts that, although not required to do so, the circuit court did give the defendant the

full *Shellstrom* admonishments when it advised him that, if his petition was recharacterized as a postconviction petition under the Act, "all issues" he wished to raise needed to be raised in his postconviction petition and that this would be his "one and only chance" to file a postconviction petition. We agree with the State's argument that the circuit court was not required to admonish the defendant pursuant to *Shellstrom*.

¶ 15     In *Shellstrom*, the defendant filed a *pro se* pleading entitled " 'Motion to Reduce Sentence, Alternatively, Petition for Writ of Mandamus to Order Strict Compliance with Terms of Guilty Plea.' " 216 Ill. 2d at 48. The circuit court recharacterized the defendant's pleading *sua sponte* as a postconviction petition filed under the Act and summarily dismissed it. *Id.* at 49. The defendant was not present in court, had no notice of the recharacterization, and had no opportunity to respond to the circuit court's dismissal of his pleading. *Id.*

¶ 16     On appeal, the defendant in *Shellstrom* argued, in relevant part, that the circuit court erred because it recharacterized his pleading summarily, without giving him notice or an opportunity to respond. *Id.* at 53. The supreme court reiterated its long-standing precedent that, where a *pro se* pleading alleges a deprivation of constitutional rights that is cognizable under the Act, the circuit court may treat that pleading as a postconviction petition. *Id.* at 51. The court then agreed with the defendant that a *pro se* litigant should be given notice before the circuit court recharacterizes his pleading as a first postconviction petition. *Id.* at 56-57. The *Shellstrom* court held that

"when a circuit court is recharacterizing as a first postconviction petition a pleading that a *pro se* litigant has labeled as a different action cognizable under Illinois law, the circuit court must (1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent

postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has." *Id.* at 57.

¶ 17 In *People v. Bland*, 2011 IL App (4th) 100624, the Fourth District explained that "*Shellstrom* stands for the proposition that, when a trial court *sua sponte recharacterizes* a pleading as a first postconviction petition, the court must provide the defendant certain admonishments." (Emphasis in original.) *Bland*, 2011 IL App (4th) 100624, ¶ 23. Accordingly, where the circuit court does not *sua sponte* recharacterize the defendant's pleading, "the court [is] not required to admonish defendant pursuant to *Shellstrom*." *Id.* ¶ 24; see also *People v. Stoffel*, 389 Ill. App. 3d 238, 243 (2009) ("Because of the defendant's repeated requests to recharacterize his section 2-1401 petition as a postconviction petition, the trial court would not have had to take *sua sponte* action, the concerns raised in *Shellstrom* would not apply, and no *Shellstrom* warnings would need to have been provided.").

¶ 18 The record in this case shows that, unlike in *Shellstrom*, the circuit court did not *sua sponte* recharacterize the defendant's section 2-1401 petition. Instead, the defendant's pleading was recharacterized pursuant to his request. As such, the circuit court was not required to admonish the defendant pursuant to *Shellstrom*. See *Bland*, 2011 IL App (4th) 100624, ¶ 23. Consequently, as no admonishments were required, we find no error in the admonishments given by the circuit court, which advised the defendant that any issue he wished to raise needed to be included in his initial postconviction petition.

¶ 19   Next, we address the defendant's argument that the circuit court erred in summarily dismissing his *pro se* amended petition at the first stage of postconviction proceedings.

¶ 20   The Post-Conviction Hearing Act provides a method by which a defendant can assert that his or her conviction or sentence was the result of a substantial denial of rights under the United States Constitution or the Illinois Constitution or both. See *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction proceeding consists of three phases. At the first stage, the phase at which the defendant's petition in this case was dismissed, the circuit court may, within 90 days of the filing of a petition under the Act, dismiss the petition as frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014). A postconviction petition is frivolous or patently without merit only if it has no arguable basis either in law or in fact, meaning that it is "based on an indisputably meritless legal theory or a fanciful factual allegation," such as a legal theory that is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16. At this stage, the allegations of fact contained in the petition are considered true, "so long as those allegations are not affirmatively rebutted by the record." *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 47. Postconviction petitions should be construed liberally, and borderline petitions should be allowed to proceed. *Id.* ¶ 5. Our review of the trial court's first-stage dismissal of a postconviction petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 21   In his opening brief before this court, the defendant argued that the circuit court erred in summarily dismissing his *pro se* postconviction petition because he raised an arguable claim that his 70-year sentence, imposed for a crime he committed while he was a juvenile, violated the eighth amendment to the United States Constitution. According to the defendant, his 70-year sentence is a *de facto* life sentence, triggering the protections of *Miller* that required the sentencing

court to consider his youth and attendant circumstances in fashioning a sentence. He asserted that the record from his sentencing hearing demonstrates that the circuit court did not consider such factors. Although he fixed the issue as whether his sentence violated the eighth amendment, the defendant did reference in passing the Illinois proportionate penalties clause's prohibition against cruel and unusual punishment. The defendant also argued that his sentence violates the eighth amendment under *Miller* because "he was subject to a sentencing scheme that required the imposition of a mandatory minimum adult sentence of 20 years." As authority for the latter argument, the defendant cited the Iowa Supreme Court decision in *State v. Lyle*, 854 N.W. 378, 400 (2014), which held that all mandatory minimum sentences imposed on a juvenile are unconstitutional under the eighth amendment prohibition against cruel and unusual punishment.

¶ 22    In response, the State correctly notes that the defendant was sentenced prior to the current "truth-in sentencing" statute being enacted, and he is, therefore, entitled to day-for-day credit. See 730 ILCS 5/3-6-3(a)(2) (West 1994) ("[T]he prisoner shall receive one day of good conduct credit for each day of service in prison other than where a sentence of 'natural life' has been imposed. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court."). As a result, the State maintained that it is "likely" the defendant will only be required to serve a term of 35 years. In *People v. Buffer,* 2019 Il 122327, ¶¶ 41-42, the supreme court held that a sentence exceeding 40 years is a *de facto* life sentence. Consequently, the State argues that, since the defendant has an opportunity for release from prison in less than 40 years, his sentence is not a *de facto* life sentence. According to the State, the record also establishes that the trial court considered the defendant's youth and attendant characteristic, and as a consequence, his "sentence is constitutionally sound under both federal and Illinois precedent." As to the issue

of the constitutionality of mandatory minimum sentences applied to a juvenile defendant, the State argues that this court has already rejected the finding of the Iowa Supreme Court in *Lyle* that all such mandatory minimum sentences are unconstitutional under the eighth amendment. We will address each component of the defendant's argument separately.

¶ 23    In *Miller*, the United States Supreme Court held that the eighth amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. The Court emphasized that "[m]andatory life without parole for a juvenile precludes consideration" of numerous mitigating factors, including the juvenile's age and its "hallmark features," and the possibility of rehabilitation. *Id.* at 477-78. Additionally, the Court held that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. In *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the Court clarified that *Miller* applies retroactively "to juvenile offenders whose convictions and sentences were final when *Miller* was decided," including cases on collateral review. 577 U.S. at 190, 212.

¶ 24    The Illinois Supreme Court has ruled that *Miller* applies to discretionary, as well as mandatory, life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40) and also to *de facto* life sentences, or sentences "that cannot be served in one lifetime" and have "the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole" (*People v. Reyes*, 2016 IL 119271, ¶¶ 9-10). As noted earlier, the supreme court in *Buffer* concluded that a sentence exceeding 40 years is a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶¶ 41-42.

¶ 25    The defendant does not dispute the fact that he may qualify for day-for-day credit that would require him to serve only 35 years of his 70-year sentence. In *People v. Dorsey*, 2021 IL 123010, the supreme court held that when, as in this case, the statutory good-conduct scheme provides a defendant some meaningful opportunity to obtain release after serving less than 40 years' incarceration, the defendant's sentence is not a *de facto* life sentence in violation of the eighth amendment to the United States Constitution. *Dorsey,* 2021 IL 123010, ¶ 64. In a supplemental brief filed by the defendant with leave of this court following remand from the supreme court, the defendant argues that the supreme court's decision in *Dorsey* is distinguishable on its facts from the instant case. The defendant relies upon the procedural posture present in *Dorsey*, namely an appeal from the denial of a successive postconviction petition; and the procedural posture of this case, an appeal from the summary dismissal of an initial postconviction petition. Although the defendant correctly asserts that satisfaction of the cause-and-prejudice test necessary to support a successive postconviction is a more exacting standard than the "gist standard" applicable to the review of initial postconviction petitions (see *People v. Conick*, 232 Ill. 2d 132, 142 (2008)), we are at a loss to understand how the distinction in standards would alter the supreme court's determination that a sentence pursuant to which a defendant has the opportunity to obtain release after serving less than 40 years' incarceration is not a *de facto* life sentence.

¶ 26    *Miller* and its progeny hold that the eighth amendment requires that, before sentencing a juvenile defendant to life imprisonment, the trial court is required to consider the defendant's youth and attendant circumstances. See *Jones v. Mississippi*, 593 U.S. ___, 141 S.Ct. 1307, 1311 (2021). Our supreme court has held that *Miller's* rationale is invoked only in the context of cases involving a juvenile sentenced to life imprisonment. *People v. Patterson*, 2014 IL 115102, ¶ 110. Under the

holding in *Miller,* it is only when a juvenile is sentenced to life imprisonment that the eighth amendment requires a hearing where the defendant's youth and attendant circumstances are considered as sentencing factors. *People v. Lusby*, 2020 IL 124046, ¶ 33.

¶ 27    The defendant's reliance on *Miller* and its progeny in support of his eighth-amendment claim is misplaced. The defendant's 70-year sentence was not a *de facto* life sentence. His sentence provides him some meaningful opportunity to be released from prison in less than 40 years. As a consequence, the defendant's 70-year sentence does not violate the eighth amendment of the United States Constitution. See *Dorsey*, 2021 IL 123010, ¶ ¶ 46, 53. Our conclusion in that regard is not changed based upon the mandatory minimum sentence of 20 years applicable to the defendant in this case.

¶ 28    To prevail on an eighth amendment claim based on *Miller* and its progeny, a defendant sentenced for a crime he committed as a juvenile "must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Buffer*, 2019 IL 122327, ¶ 27. The defendant in this case did not receive a life sentence. As such, he cannot prevail on an eighth amendment claim, regardless of the fact that he was subject to a mandatory minimum sentence of 20 years. We conclude, therefore, that the eighth amendment claim asserted in the defendant's *pro se* postconviction petition is patently without merit.

¶ 29    Having determined that the defendant's eighth amendment claim is patently without merit, we next address his argument that his postconviction petition raised an arguable claim that a 70-year prison term imposed for a crime he committed while he was a juvenile violated the proportionate penalties clause of the Illinois Constitution.

¶ 30    The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Our supreme court has explained that the proportionate penalties clause's unique emphasis on rehabilitative potential provides " a limitation on penalties beyond those afforded by the eighth amendment [to the United States Constitution]." *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41.

¶ 31    The proportionate penalties clause argument contained in the defendant's opening brief in this case was underdeveloped. In fact, there is only a single passing reference to the proportionate penalties clause and that reference is in support of the proposition that cruel and unusual punishment is prohibited. In the supplemental brief filed with leave of court following remand from the supreme court, the defendant argues that his 70-year sentence "arguably violates the Illinois Constitution because it shocks the moral sense of the community and undermines the objective of all penalties which is to restore the offender to useful citizenship." He contends that "the ultimate question" of whether his sentence is constitutionally proportionate under the Illinois Constitution is prematurely decided at the first stage of a postconviction proceeding.

¶ 32    The State argues that the proportionate penalties clause of the Illinois Constitution is not violated simply because a juvenile offender is sentenced to a harsh adult sentence. According to the State, the circuit court fashioned the defendant's penalty based on the nature of his conduct and after properly considering all aggravating and mitigating factors, including the seriousness of the offense.

¶ 33    To succeed on a claim brought pursuant to the proportionate penalties clause of the Illinois Constitution, the defendant must demonstrate either that the penalty is degrading, cruel, "or so

wholly disproportionate to the offense that it shocks the moral sense of the community;" or that another offense containing the same elements has a different penalty. *People v. Klepper*, 234 Ill. 2d 337, 348-49 (2009).

¶ 34 There is no contention in this case that another offense has the same elements as first-degree murder and has a different penalty. The defendant does not dispute that his sentence is within the statutory range for first-degree murder with a showing of cruel and heinous conduct. A conviction for first degree murder carries a sentence of not less than 20 years and not more than 60 years. 730 ILCS 5/5-8-1(a)(1) (West 1998). When, as in this case, the murder is found to have been accompanied by exceptionally brutal and heinous behavior, the defendant is subject to an extended term of imprisonment of not less than 60 years and not more than 100 years. 730 ILCS 5/5-8-2(a)(1) (West 1998). In *People v. Leon Miller*, 202 Ill. 2d 328 (2002) the supreme court held that " '[w]hen the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents the general moral ideas of the people, and the courts will not hold the punishment so authorized as either cruel and unusual.' " 202 Ill. 2d at 339 (quoting *People ex rel Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894)). Falling within the statutory range for first-degree murder with a showing of cruel and heinous conduct, the defendant's 70-year sentence is neither cruel or unusual. We are left with the question of whether the defendant's sentence is so wholly disproportionate to the offense that it shocks the moral sense of the community.

¶ 35 As noted earlier, the factual basis for the defendant's plea established that he and four co-defendants abducted Glass. After binding Glass's arms and legs, the defendant, along with his co-defendants, kicked and beat Glass, struck him over the head with a paint can, pushed his face onto

lit stovetop burners, pushed him down a hill toward a canal, weighed down his clothing with rocks, and then held Glass underwater until he drowned. The trial court found that defendant's actions were cruel and heinous and sentenced him to an extended term of 70 years' incarceration. Based upon the facts surrounding the defendant's involvement in the abduction, torture, and murder of Glass, a 70-year sentence is not disproportionate to the offense committed, nor does it shock the moral sense of the community.

¶ 36 Finally, on the question of whether, in sentencing the defendant, the circuit court gave due consideration to his rehabilitative potential, we note that record reflects that the circuit court: was in possession of a presentence report that reflected the defendant was 17 years of age at the time that he committed the offenses for which he was convicted; heard the arguments of counsel both in aggravation and mitigation; considered the impact statement from Glass's sister in aggravation and the testimony of the defendant's mother and sister in mitigation; received and considered a number of letters submitted in mitigation; and heard the defendant's statement in allocution, during which he accepted responsibility for his actions and apologized. Further, it was stipulated that an investigator from the Calumet Park Police Department, if called as a witness, would testify that the defendant gave a statement, admitting that, on April 1, 1995 (3 months after the commission of the acts giving rise to the instant case), he was in possession of a shotgun that he fired at the front door of a house. After reviewing the facts of this case, the circuit court found that the defendant's actions were cruel and heinous and sentenced him to an extended term of 70 years' incarceration that, according to the then statutory good-conduct scheme, provided the defendant some meaningful opportunity to obtain release after serving 35 years of his sentence.

¶ 37 The day-for-day good time scheme applicable to the defendant was designed to encourage rehabilitation and enable an offender to be released after serving half of his determinate sentence. *Dorsey*, 2021 IL 123010, ¶ 51. The defendant's 70-year sentence, 10 years above the minimum for first degree murder found to have been accompanied by brutal and heinous behavior, afforded the defendant a meaningful opportunity to obtain release in 35 years based upon demonstrated maturity and rehabilitation.

¶ 38 There is no indication in the Illinois Constitution that the possibility of rehabilitating an offender is to be given greater weight and consideration than the seriousness of the offense in determining a proper sentence. *People v. Huddleston,* 212 Ill. 2d 107, 129 (2004); *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). In this case, the record reflects that the defendant's sentence both took into consideration the seriousness of the offense for which he was convicted and encouraged his rehabilitation. We conclude, therefore, that, to the extent that the defendant's postconviction petition can be interpreted as raising a claim under the proportionate penalties clause of the Illinois Constitution, the claim is patently without merit.

¶ 39 Based on the foregoing analysis, we affirm the circuit court's order summarily dismissing the defendant's postconviction petition.

¶ 40 Affirmed.

No. 1-17-0677

Attorneys for Appellant:    James E. Chadd, State Appellate Defender
Douglas R. Hoff, Deputy Defender
Bryon M. Reina, Assistant Appellate Defender Office of the
State Appellate Defender First Judicial District
 203 N. LaSalle St., 24th Floor
Chicago, IL 60601
 (312) 814-5472


Attorneys for Appellee:    Kimberly M. Foxx, State's Attorney of Cook County
Alan J. Spellberg, Mari R. Hatzenbuehler,
Assistant State's Attorneys
Richard J. Daley Center – 3rd Floor
Chicago, IL 60602
(312) 603-5496