148   413
156    96
156   241
148   413
165   611
167   464
148   413
187  ¹⁵597
148   413
L195  ¹589
195   591
148   413
201   ²  16

THE PEOPLE *ex rel.* Lida Bradley

*v.*

THE ILLINOIS STATE REFORMATORY.

*Filed at Ottawa January 16, 1894.*

1. CRIMINAL LAW—STATE REFORMATORY—*constitutionality.* The act entitled "An act to establish the Illinois State Reformatory, and making an appropriation therefor," approved June 18, 1891, is a valid and constitutional enactment, except as to the provisions of section 15 thereof. The intention of the act is to afford a means for the reformation of youthful criminals.

2. SAME—*a criminal enactment.* This statute is a criminal enactment, and a sentence under it must be regarded as a penalty and punishment for crime of which the party committed has been convicted.

3. SAME—*judgment under, not void for uncertainty.* A judgment or sentence of imprisonment in the State reformatory, without fixing any limit to the duration thereof, and the *mittimus* issued thereon, are not void for uncertainty, as the judgment and *mittimus* are to be read and interpreted in the light of, and under the restrictions imposed by, the statute upon which they are based. That statute provides that although the sentence is a general one, yet that such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted.

4. The fact that the prisoner may, in accordance with the provisions of the act, be sooner discharged by an order of the court, on the recommendation of the board of managers of the reformatory, or by the pardon or commutation of the Governor, will not have the effect of rendering the sentence and commitment uncertain and indefinite.

5. SAME—*does not inflict punishment out of proportion to the offense.* The act is not in violation of that portion of section 11 of article 2 of the State constitution which declares that "all penalties shall be proportioned to the nature of the offense."

6. Imprisonment is not a cruel and unusual punishment for burglary or larceny or other crime, and on that ground to be regarded as disproportioned to the nature of the offense. The term of the imprisonment, if it does not extend to perpetual imprisonment, is to a great extent, if not altogether, a matter of legislative discretion.

7. Even if the statute fixing the punishment was such that it imposed an absolute penalty of twenty years' imprisonment upon every conviction for such crime, its validity could not on that ground be impeached.

When the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents the general moral ideas of the people, and the courts will not hold the punishment so authorized as either cruel and unusual, or not proportioned to the nature of the offense, unless it is a cruel or degrading punishment not known to the common law, or a degrading punishment which had become obsolete in the State prior to the adoption of its constitution, or is so wholly disproportioned to the offense as to shock the moral sense of the community.

8. The quantity of punishment can never be absolutely determined by any standing, invariable rule, but it must be left to the arbitration of the legislature to inflict such penalties as are warranted by the laws of nature and society, and such as appear to be best calculated to answer the end of prevention against future offenses.

9. SAME—*punishment of minor over sixteen years of age is not in excess of that applied to adults.* An adult convicted of burglary is by law to be sentenced to the penitentiary, and to either solitary confinement, or hard labor therein, while a minor over the age of sixteen, instead of being sentenced to confinement or hard labor in the penitentiary, is committed to the reformatory for twenty years, where he may receive an education and be admitted to parole, and where he may be discharged long before the expiration of his sentence. The punishment of the minor defendant is not so great as that inflicted on adults for the same offense, and is therefore not disproportioned to the nature of the offense of which he is convicted.

10. Even if section 15 of the act creating the Illinois State Reformatory is in conflict with the constitution, it does not follow that the entire act is invalid, as that section may be eliminated, and it does not have the effect to render the other provisions void.

11. SAME—*right to have a jury fix amount of punishment.* A prisoner on trial for burglary, or other violation of the criminal law, has not a constitutional right to have the quantity of his punishment fixed by a jury. The constitutional right of trial by jury is limited to the trial of the question of guilt or innocence.

12. The object of punishment is the prevention of future offenses, and such object is to be attained in three ways: by the amendment of the offender himself, by deterring others through his example, and by depriving the guilty of the power to do further mischief.

13. It does not follow, from the fact the statute relating to the State reformatory imposes the maximum term of imprisonment provided by law for the crime for which the prisoner is convicted, that such statute is in violation of the constitutional requirement that all penalties shall be proportioned to the nature of the offense.

14. CONSTITUTION—*of the United States.* Articles 5 and 8 of the constitution of the United States have no application to State governments, but are exclusively restrictions upon Federal powers.

15. CONSTITUTIONAL LAW—*when unconstitutionality of part of a law will not affect the residue.* The law is well settled that where constitutional and unconstitutional provisions in a statute are distinct and separable, the valid provisions may stand as though the invalid provisions had not been introduced therein.

This was an application in this court for a writ of *habeas corpus.* The facts are sufficiently stated in the opinion of the court.

Messrs. SANDS & MURPHY, for the relator.

Mr. M. T. MOLONEY, Attorney General, for the respondent.

Mr. CHIEF JUSTICE BAKER delivered the opinion of the Court:

A writ of *habeas corpus* was issued herein by order of this court, upon the petition of Lida Bradley, for the purpose of inquiring into the cause of the imprisonment and detention of Joseph Bradley and Harry Justice in the Illinois State Reformatory at Pontiac. The writ was directed to the superintendent, board of managers and officials in charge of the Illinois State Reformatory, and a return was made to the writ.

Said Joseph Bradley and Harry Justice were indicted in the circuit court of Peoria county for burglary and larceny, were tried before a jury upon pleas of not guilty, and the jury returned a verdict finding them guilty in manner and form as charged in the indictment, and that they were each above the age of ten years and under the age of twenty-one years,— *i. e.,* of the ages of eighteen and twenty years, respectively. The jury did not, in their verdict, fix any punishment or term of imprisonment. Thereupon the circuit court ordered and adjudged that said Joseph Bradley and Harry Justice should be confined in the Illinois State Reformatory, in safe and secure custody, for and during a term of commitment to be terminated by the board of managers of said Illinois State

Reformatory. A mittimus was issued by the clerk of the court, which contained a true copy of the final judgment and sentence of the court as entered of record, and was directed to the sheriff of Peoria county to execute; and the detention of said Joseph Bradley and Harry Justice in the reformatory is by virtue of such judgment, sentence and commitment.

The trial and proceedings upon said indictment for burglary and larceny, and the judgment that was rendered by the court, were based upon the provisions of an act of the legislature of the State, entitled "An act to establish the Illinois State Reformatory, and making an appropriation therefor," approved June 18, 1891. (Laws of 1891, p. 51.) Section 9 of the act divides the inmates sentenced to the reformatory into two divisions, the first to include males between the ages of ten and sixteen years, and the second to include males between the ages of sixteen and twenty-one years. Section 10 provides, in substance, that in all criminal cases tried by jury, in which the jury shall find the defendant guilty, they shall also find, by their verdict, whether or not the defendant is between the ages of ten and twenty-one years, and if between said ages, then find, as nearly as may be, the age of the defendant; and that if the defendant is found to be between said ages, and it shall not be shown in the cause that the defendant has previously been sentenced to a penitentiary, and if the offense of which the defendant is convicted is not a capital offense, then the jury shall not fix the punishment. Section 11 makes provision for the cases of boys between the ages of ten and sixteen years who are convicted of crime. Section 12 provides as follows: "Any court in this State exercising criminal jurisdiction may sentence to the said reformatory any male criminal between the ages of sixteen and twenty-one years, and not shown to have been previously sentenced to a penitentiary in this or any other State or country, upon the conviction in such court, of such male person, of a crime punishable, under existing laws, in a penitentiary, and the said board of

managers shall receive and take into said reformatory all male prisoners of the class aforesaid who may be legally sentenced on conviction, as aforesaid; and all existing laws requiring the courts of this State to sentence to the penitentiary male prisoners convicted of any criminal offense, between the ages of sixteen and twenty-one years, and not shown to have been previously sentenced to a State prison in this or any other State or country, shall be applicable to said reformatory, so far as to enable courts to sentence the class of prisoners so last defined to said reformatory, and not to a penitentiary." Section 13 provides as follows: "Every sentence to the reformatory of a person hereafter convicted of a felony or other crime shall be a general sentence to imprisonment in the Illinois State Reformatory, and the courts of this State imposing such sentence shall not fix or limit the duration thereof. The term of such imprisonment of any person so convicted and sentenced shall be terminated by the board of managers of the reformatory, as authorized by this act, but such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced." Section 16 is as follows: "The said board of managers shall have power to establish rules and regulations under which prisoners within the reformatory may be allowed to go upon parole outside of the reformatory building and enclosure, but to remain, while on parole, in the legal custody and under control of the board of managers, and subject at any time to be taken back within the enclosure of said reformatory; and full power to enforce such rules and regulations to retake and re-imprison any inmate so upon parole is hereby conferred upon said board, whose order, certified by its secretary and signed by its president, with the seal of the reformatory attached thereto, shall be a sufficient warrant for the officer named in it to authorize such officer to return to actual custody any conditionally released or paroled prisoner, and it is hereby made the duty of all officers to execute said order the

27—148 ILL.

same as ordinary criminal process : *Provided,* that no prisoner shall be released on parole until the said board of managers shall have satisfactory evidence that arrangements have been made for his honorable and useful employment, for at least six months while upon parole, in some suitable occupation." Section 17, among other things, makes it the duty of the board of managers to adopt such rules concerning all prisoners committed to their custody as shall prevent them from returning to criminal courses, best secure their self-support, and accomplish their reformation. It also provides that if any prisoner on parole shall violate the conditions of his parole or conditional release, he shall, by a formal order entered in the managers' proceedings, be declared a delinquent, and shall thereafter be treated as an escaped prisoner owing service to the State, and shall be liable, when arrested, to serve out the unexpired term of his maximum possible imprisonment. It is provided, in substance, in section 18, that when any prisoner has served not less than six months of his parole acceptably, has given such evidence as is deemed reliable and trustworthy that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, then the judge of the court that sentenced him to the reformatory shall enter an order for the final discharge of the prisoner from further liability under his sentence, such order to be based upon a record and recommendation made by the board of managers of the reformatory ; and it is provided in said section that nothing in the act contained shall be construed as impairing the power of the Governor to grant a pardon or commutation in any case. By section 21 the laws that govern the penitentiaries of the State, so far as they relate to the prevention of escapes, and several other specified matters, are made applicable to and declared to be in force in the reformatory.

That in the enactment of this law it was the humane and benign intention of the General Assembly to afford a means

for the reformation of youthful criminals, is manifest from the fact that the institution is devoted solely to the reception of minors between the ages of ten and twenty-one years, and from the various provisions of the act. At the same time we can not concur in the suggestion made by the Attorney General, that a sentence imposed by virtue of the act is not intended as, and is not in fact, a punishment for crime committed, but that such sentence is for the sole and only purpose of reforming the offender. Only those who have been convicted, before a court of competent jurisdiction, of felony or other crime can be sentenced to the reformatory, and the act requires that the sentence shall be "to imprisonment," and uses the expression "term of imprisonment," and other like language, and uniformly employs the words "prisoner" and "prisoners" to designate those who have been committed to the reformatory. Without further reference to the various provisions of the act, many of which we have hereinbefore mentioned, we may say that in our opinion the statute is a criminal enactment, and that a sentence under it to the State reformatory must be regarded as a penalty and punishment for crime of which the party committed has been convicted.

It is admitted by the relator that the judgment and sentence of the court were in accordance with the provisions of the statute, since the statute requires that every sentence to the reformatory of a person between the ages of sixteen and twenty-one years, convicted of a felony or other crime, shall be a general sentence to imprisonment in the Illinois State Reformatory, that the courts imposing the sentence shall not fix or limit the duration thereof, and that the term of imprisonment shall be terminated by the board of managers, as authorized by the act. It is insisted, however, that as by the judgment and warrant of commitment the imprisonment was not for a specified time, but "to be terminated by the board of managers of the Illinois State Reformatory," the judgment and *mittimus* were void for uncertainty, and that the statute

which makes provision for such a judgment is unconstitutional and invalid; and in that behalf reliance is placed upon the case of *The People ex rel.* v. *Pirfenbrink*, 96 Ill. 68, where it was held that all judgments must be specific and certain, and must determine the rights recovered or the penalties imposed. We think that the judgment and *mittimus* in this case must be read and interpreted in the light of and under the restrictions imposed by the statute upon which they are based. That statute provides, that although the sentence is a general sentence to imprisonment, yet that "such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced." This provision, and others of like import, being read into the judgment and *mittimus*, we think that it should be regarded that the judgment and commitment in this case were for twenty years, that being the maximum term provided by law for the crime of burglary. The fact that the prisoners might, in accordance with the provisions of the act, be sooner discharged by an order of court, predicated upon the recommendation of the board of managers of the reformatory, or by the pardon or commutation of the Governor, would not have the effect of rendering the sentence and commitment uncertain and indefinite. It follows that it is provided by the statute, and by the judgment and commitment herein, for what period of time Joseph Bradley and Harry Justice are to be detained in the reformatory.

It is insisted that even if this be so, yet the punishment is not proportioned to the offense committed, and that the statute is in violation of that portion of section 11 of article 2 of the constitution of the State which declares that "all penalties shall be proportioned to the nature of the offense." In 2 Blackstone's Commentaries (book 4, *12,) it is said: "The method of inflicting punishment ought always to be proportioned to the particular purpose it is meant to serve, and by no means to exceed it." And it is there also said: "The

quantity of punishment can never be absolutely determined by any standing, invariable rule, but it must be left to the arbitration of the legislature to inflict such penalties as are warranted by the laws of nature and society, and such as appear to be best calculated to answer the end of prevention against future offenses." In fact, the object of punishment is the prevention of future offenses, and such object is to be attained in three ways: by the amendment of the offender himself, by deterring others through his example, and by depriving the guilty party of the power to do further mischief. (Idem. pp. 11, 12; 4 Am. and Eng. Ency. of Law, 721.) Imprisonment is not a cruel and unusual punishment for burglary or larceny or other crime, and on that ground to be regarded as disproportioned to the nature of the offense. (4 Am. and Eng. Ency. of Law, p. 722, and authorities cited in notes.) The term of the imprisonment, if it does not extend to perpetual imprisonment, is to a great extent, if not altogether, a matter of legislative discretion. For very many years the statute of this State has been such that the punishment for burglary might extend to a term of imprisonment of twenty years, and the validity of such statute has not been, and could not successfully be, called in question. And even if the statute fixing the punishment for burglary was such as that it imposed an absolute penalty of twenty years' imprisonment upon every conviction for such crime, its validity could not on that ground be impeached. When the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents the general moral ideas of the people, and the courts will not hold the punishment so authorized as either cruel and unusual, or not proportioned to the nature of the offense, unless it is a cruel or degrading punishment not known to the common law, or is a degrading punishment which had become obsolete in the State prior to the adoption of its constitution, or is so wholly disproportioned to the offense committed as to shock the moral

sense of the community.   (See *In re Bayard*, 25 Hun, 546.)
Neither the infliction of twenty years' imprisonment for the
crime of burglary, nor the infliction for the violation of any
provision of the Criminal Code of the maximum quantity of
the usual punishment for such violation, falls within either of
these categories.   We think that from the fact that the statute
here in question imposes the maximum term of imprisonment
provided by law for the crime for which the prisoner is con-
victed, it does not follow that such statute is in violation of
the constitutional requirement that all penalties shall be pro-
portioned to the nature of the offense.

Nor is it true that a prisoner on trial for burglary and lar-
ceny, or for any other violation of the criminal law, has a
constitutional right to have the quantity of his punishment
fixed by a jury.   At common law the jury either returned a
special verdict, setting forth all the circumstances of the case
and praying the judgment of the court thereon, or a general
verdict of guilty or not guilty.   The punishment was fixed by
the court, and governed by the laws in force.   (2 Blackstone's
Com. book 4, 361.)   And in this State, and at the present
time, the penalties for violations of the Criminal Code are in
many cases not fixed by the jury, but by the court.   (Rev.
Stat. p. 413, secs. 446, 447, etc.)   The constitutional right
of trial by jury is limited to the trial of the question of guilt
or innocence, and we think there can be no question of the
validity of the sections of the statute to which we have made
reference in this connection.

In the event a man of adult years commits the crime of
burglary, he may be imprisoned in the penitentiary for a term
not less than one year nor more than twenty years, and if he
pleads not guilty, then the jury say in their verdict for what
length of time, within the limits fixed by the statute, he shall
be confined in the penitentiary.   (Crim. Code, secs. 36, 444.)
It is provided, in substance, in sections 10, 12 and 13 of the
statute now under consideration, that if a minor between the

ages of sixteen and twenty-one years commits such crime, and has not previously been sentenced to a penitentiary, then the jury shall not fix the punishment, but his sentence shall be a general sentence to imprisonment in the State reformatory, the effect of which shall be imprisonment in such reformatory for the maximum term provided by law for the crime,—*i. e.*, for twenty years,—unless such imprisonment is sooner terminated by the board of managers of the reformatory in the manner authorized by the act. In other words, the adult has the statutory right to have the question submitted to the decision of a jury whether his term of imprisonment shall be one year or some other space of time to be fixed by them, and not exceeding twenty years, while for the same offense and under like circumstances the minor is necessarily sentenced to imprisonment for twenty years,—the maximum term provided by law for the offense. Is there such inequality and injustice in this as that it can be regarded that the penalty imposed upon the minor is not proportioned to the nature of the offense of which he is convicted?

There is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors. The habits and characters of the latter are, presumably, to a large extent as yet unformed and unsettled. This distinction may well be taken into consideration by the legislative power in fixing the punishment for crime, both in determining the method of inflicting punishment and in limiting its quantity and duration. An adult convicted of burglary would be sentenced to the penitentiary, and to either solitary confinement or hard labor therein, and the statutes which consign him to such punishment must be regarded as highly penal. A minor, however, instead of being sentenced to solitary confinement or hard labor in a penitentiary, is committed to the State reformatory. The general scope and humane and benign purpose of the statute establishing the reformatory are clearly indicated by the fol-

lowing provisions found in section 6: "It shall be the duty of the managers to provide for the thorough training of each and every inmate in the common branches of an English education; also in such trade or handicraft as will enable him, upon his release, to earn his own support. For this purpose said managers shall establish and maintain common schools and trade schools in said reformatory, and make all needful rules and regulations for the government of the same." And such beneficent purpose is also shown by the provision in section 8, that the general superintendent of the institution shall have charge of its inmates, and shall discipline, govern, instruct, employ and use his best efforts to reform them; and numerous other provisions of like tendency and effect are to be found in the act, such as those for the releasing of prisoners upon parole, where arrangements have been made for honorable and useful employment in some suitable occupation, and for the final discharge of prisoners from further liability under their sentences, etc. It is manifest that the sentences provided for in the statute establishing the reformatory, although to be regarded as punishments for crime, are not of so purely a penal character as those imposed upon adults convicted of like offenses, but that the primary object of the statute is the reformation and amendment of those committed to the reformatory. It follows, therefore, that the case of an adult liable to be sentenced to the penitentiary for the crime of burglary for a term of not less than one nor more than twenty years, is not parallel to that of a minor required to be sentenced to the State reformatory for a term of twenty years for the like offense, and that no comparison can be instituted between them, and conclusion arrived at therefrom that the penalty imposed upon the minor is not proportioned to the nature of the offense of which he is convicted.

Upon full consideration we find no just ground for holding that the act establishing the reformatory is in conflict with section 11 of article 2 of the constitution of this State.

Some slight degree of reliance seems to be placed by the petitioner upon the claim that the act in question is in conflict with articles 5 and 8 of the amendments to the constitution of the United States. Perhaps this claim has been sufficiently answered by that which has been already said; but however this may be, it is a complete answer to say that said articles of amendment have no application to State governments, but are, exclusively, restrictions upon Federal power. *Penear* v. *Commonwealth*, 5 Wall. 475; *Commonwealth* v. *Hitchings*, 5 Gray, 482; *Twitchell* v. *Commonwealth*, 7 Wall. 321; *Fox* v. *Ohio*, 5 How. 434.

It is urged that the act establishing the reformatory is invalid, because section 15 of said act empowers the board of managers of the institution to transfer to the penitentiary of the proper district any prisoner sentenced to the reformatory, who, subsequent to his committal, is shown to have been, at the time of his conviction, more than twenty-one years of age, or to have been previously convicted of crime, or who is apparently incorrigible, and whose presence, therefore, in the reformatory, appears to be seriously detrimental to the wellbeing of the institution, and authorizes the imprisonment in such penitentiary of such prisoner at hard labor, and subject to all the rules and discipline of such penitentiary, for the full maximum term provided by law for the crime of which he was convicted. It may be difficult to say that the provisions of said section 15 are valid; but that question is not now properly before this court, for it does not appear that either Bradley or Justice has been sent, or is about to be sent, under the provisions of said section, to a penitentiary. Assuming, for the purposes of this decision, that said section 15 is unconstitutional, yet it may be eliminated from the act, and the residue of the act be readily, properly and intelligently enforced; and the settled law is, that when constitutional and unconstitutional provisions in a statute are distinct and separable, the valid provisions may stand as though the invalid

provisions had not been introduced therein. *Donnersberger* v. *Prendergast et al.* 128 Ill. 229, and authorities therein cited.

We are unable to arrive at the conclusion that either Joseph Bradley or Harry Justice is wrongfully, illegally or without warrant of law imprisoned and deprived of his liberty in the Illinois State Reformatory at Pontiac, and they are therefore remanded to the custody of the constituted authorities of said reformatory, and the writ of *habeas corpus* herein is dismissed at the costs of the petitioner.

*Writ dismissed.*

SHOPE and MAGRUDER, JJ., dissenting.