2022 IL App (1st) 170532-U

No. 1-17-0532

Order filed September 30, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 98 CR 11748 (01) |
| | ) | |
| SAMUEL QUEZADA, | ) | Honorable |
| | ) | Paula M. Daleo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justice Walker concurred in the judgment.
Justice Mitchell dissented in the judgement

**ORDER**

¶ 1    *Held*:  We reverse the dismissal of defendant's *pro se* postconviction petition at the first stage where he stated the gist of an arguable claim that his 68-year aggregate sentence violated the proportionate penalties clause and remand for second-stage proceedings.

¶ 2    This appeal concerns the application of our supreme court's decision in *People v. Buffer*, 2019 IL 122327, and its more recent decision in *People v. Dorsey*, 2021 IL 123010, both of which address considerations in juvenile sentencing, specifically whether certain sentences impose a *de*

*facto* life sentence on a juvenile offender. Defendant Samuel Quezada was a minor at the time he committed the offenses of first-degree murder and attempted murder and was sentenced to consecutive prison terms of 50 years and 18 years respectively. On appeal, defendant contends that: (1) the trial court erred in summarily dismissing his postconviction petition because his 68-year prison term constitutes a *de facto* life sentence improperly imposed on a juvenile defendant under *Buffer* despite his eligibility for day-for-day credit, and giving inadequate consideration to the attributes of youth in imposing the sentence; and (2) alternatively, the summary dismissal of his postconviction petition should be reversed because he stated an arguable basis that his 68-year sentence was grossly disproportionate under Illinois' proportionate penalties clause and the eight amendment as applied to him.

¶ 3    This appeal was previously decided in an opinion issued on September 25, 2020, in which this court found that defendant's sentence was at odds with the letter and spirit of *Buffer*, which held that, under most circumstances, a prison sentence of more than 40 years imposed on a juvenile offender constitutes a *de facto* life sentence in violation of the eighth amendment (*Buffer*, 2019 IL 122327, ¶¶ 41-42), and accordingly vacated the sentence and remanded the case for a new sentencing hearing. *People v. Quezada*, 2020 IL App (1st) 170532. Subsequent to this court's decision, our supreme court issued its opinion in *Dorsey*, in which the court held that a juvenile's eligibility for day-for-day good-conduct credit that offered an opportunity for release after serving less than 40 years in prison was not a *de facto* life sentence in violation of the eighth amendment. *Dorsey*, 2021 IL 123010, ¶ 65. On November 24, 2021, our supreme court issued a supervisory order to this court, directing us to vacate our 2020 judgment in defendant's appeal and to review the appeal by considering the effect of its opinion in *Dorsey* on the issue of whether defendant's

sentence constituted a *de facto* life sentence, and determine if a different result is warranted. *People v. Quezada*, No. 126562 (Ill. November 24, 2021) (supervisory order). This court's previous judgment was vacated on January 31, 2022, and we now reconsider defendant's appeal in accordance with our supreme court's supervisory order. For the reasons that follow, we reverse the summary dismissal of defendant's postconviction petition and remand for second-stage proceedings on his proportionate penalties claim.[1][2]

¶ 4                                      BACKGROUND

¶ 5      Defendant was the shooter in a gang-related drive-by shooting that killed Robert Delosantos and injured Edward Puente on March 31, 1998. The evidence presented at defendant's open guilty plea hearing established that then 15-year-old defendant and his 22-year-old codefendant drove by a group that was sitting on a porch and flashed gang signs at them. Codefendant, who was driving, turned the car around and drove back towards the group before he reached under the seat, passed a gun to defendant, and yelled for defendant to shoot them before they shot first. Defendant fired the gun, resulting in the death of Delosantos and the injury of Puente. At the time of the shooting, defendant was 15 years old. Defendant subsequently pled guilty to one count of first-degree murder and one count of attempted murder in an open plea when he was 16 years old. As stated earlier, he was sentenced to consecutive terms of 50 years for the murder and 18 years for the attempted murder, for an aggregate sentence of 68 years on March 4,

---

[1] Justice John Griffin originally sat on the panel for this appeal and authored its original disposition. Justice Griffin is no longer with the appellate court. Therefore, Justice Sharon Oden Johnson will serve in his stead and has read the briefs, record, and decision which are the subject of this appeal.

[2] Justice Daniel Pierce originally sat on the panel for this appeal but has since recused himself from this appeal. Justice Raymond W. Mitchell will serve in his stead and has read the briefs, record, and decision which are the subject of this appeal.

1999. The trial court noted in its sentencing that defendant's sentence would be served with day-for-day credit.

¶ 6    In November 2016, defendant filed a *pro se* postconviction petition, arguing that his 68-year sentence constituted a *de facto* life sentence that was unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), *Montgomery v. Louisiana*, 577 U.S. 190 (2016) and its progeny including *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 69-77, in which the court considered a sentencing challenge under the proportionate penalties clause. The trial court summarily dismissed his petition.

¶ 7    Defendant appealed the summary dismissal of his postconviction petition. Initially, the Office of the State Appellate Defender moved to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), finding that the contentions in defendant's appeal lacked merit. We granted counsel's motion to withdraw, and we affirmed the trial court's judgment dismissing defendant's postconviction petition. *People v. Quezada*, No. 1-17-0532 (2019) (unpublished summary order under Illinois Supreme Court Rule 23 (c)).

¶ 8    Our supreme court announced its decision in *Buffer* on April 18, 2019 and defendant filed a petition for rehearing on May 20, 2019. In his petition for rehearing, he argued that he was simply a passenger in 22-year-old codefendant Reyna Oscar's car. When Reyna made a U-turn and pulled a gun from under the driver's seat, defendant did not know how to remove himself from a "crime producing setting." Defendant stated that he was unaware of Reyna's intention until Reyna drove back down the street where the victims were sitting on a porch, handed him the gun, and yelled at him to "shoot before they shoot us." He stated that he only had seconds to contemplate his decision. Additionally, defendant argued that he was diagnosed with Thrombotic Thrombocytopenic

Purpura (TTP) in April 2012, which requires outside medical appointments and blood transfusions. He further contended that the sentencing judge did not fully consider his youth, vulnerability to negative influences, peer pressure in the moment from his older codefendant, inability to leave the situation, or his incompetence associated with his youth. While defendant acknowledged that his sentence was not formally a life sentence, he argues that his release after 34 years, considering his existing medical condition, is essentially a life sentence. In *Buffer*, the supreme court held that, under most circumstances, a prison sentence of more than 40 years imposed on a juvenile offender constitutes a *de facto* life sentence in violation of the eighth amendment. *Buffer*, 2019 IL 122327, ¶¶ 41-42.

¶ 9 We subsequently granted defendant's petition for rehearing on July 10, 2019. In our order granting rehearing, we vacated the order granting counsel's motion to withdraw under *Finley*, and we directed defendant to address the issues in this case insofar as they were affected by the supreme court's intervening judgment in *Buffer*. The parties briefed the issues, and their contentions were previously considered for determination.

¶ 10 In an opinion issued on September 25, 2020, we reversed the summary dismissal of defendant's postconviction petition. *Quezada*, 2020 IL App (1st) 170532, ¶ 23. Relying on this court's decision in *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 19,[3] we found that defendant's day-for-day credit should not be considered for purposes of determining whether a sentence is a

---

[3] At the time of the original disposition, *Peacock* had a petition for leave to appeal (PLA) pending in the supreme court (No. 125340 filed October 4, 2019). On December 29, 2021, that PLA was denied, and an identical supervisory order was issued by our supreme court to reconsider the decision in light of *Dorsey*.

de facto life sentence because day-for-day credit is a function of the Illinois Department of Corrections (IDOC), not the judiciary. *Quezada*, 2020 IL App (1st) 170532, ¶ 14.

¶ 11     The State filed a PLA in the supreme court on October 28, 2020. While the PLA was pending, the supreme court issued its decision in *Dorsey* on July 29, 2021. The supreme court subsequently denied the State's PLA on November 24, 2021, and issued the supervisory order which directed that we vacate the previous judgment in this case and reconsider it in light of the holding in *Dorsey*. *Quezada*, No. 126562 (Ill. November 24, 2021) (supervisory order).

¶ 12                                            ANALYSIS

¶ 13     Defendant raised the issue of the constitutionality of his sentence in a postconviction petition. The trial court dismissed the petition at the first stage, prior to our supreme court's decision in *Buffer*. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a process by which a criminal defendant may challenge his or her conviction by filing a petition in the circuit court. 725 ILCS 5/122-1 (West 2016). The Act establishes a three-stage process for adjudicating postconviction petitions. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 20. At the first stage, the trial court independently assesses the merit of the petition. 725 ILCS 5/122-2.1 (West 2016). If the court finds the petition to be "frivolous" or "patently without merit," the court shall dismiss the petition. 725 ILCS 5/122.1(a)(2) (West 2016). A postconviction petition may be dismissed as frivolous or patently without merit only if it has no arguable basis either in law or fact, and its allegations must be taken as true and construed liberally. *People v. Allen*, 2015 IL 113135, ¶ 25. Our review of the summary dismissal of a postconviction petition is *de novo*. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 14     Defendant contends that his 68-year sentence is unconstitutional under *Buffer* because day-for-day credit is not guaranteed and can be awarded or denied based on the actions of the IDOC. A consideration of whether a defendant's sentence constitutes a *de facto* life sentence should be based on the judicially imposed sentence and not on whether the IDOC decides to award good conduct credit. He cited to *Peacock* and *People v. Frison*, 365 Ill. App. 3d 932, 935 (2006) as support.

¶ 15     In response to defendant's arguments, the State argues that defendant's sentence does not exceed the bounds set forth in *Buffer* because he is entitled to receive day-for-day credit on his sentence. Thus, the State contends, defendant's sentence really imposes 34 years in prison because defendant is only required to serve 50% of his 68-year sentence when his day-for-day credit is considered.

¶ 16     As previously noted, our supreme court has recently issued a decision in *Dorsey* which addresses the issue of the effect of day-for-day credit in determining whether a juvenile offender's sentence is a *de facto* life sentence. In *Dorsey*, the defendant was 14 years old at the time he committed the offenses of first-degree murder and attempted first-degree murder and was sentenced to consecutive terms of 40 years for first-degree murder, and two 18-year terms for attempted first-degree murder, for an aggregate sentence of 76 years. *Dorsey*, 2021 IL 123010, ¶¶ 14-19. In imposing sentence, the trial court considered the defendant's youth, family circumstances and educational achievements while in juvenile detention as mitigating evidence. *Id.* ¶ 18. After his convictions and sentences were affirmed on direct appeal, defendant filed a postconviction petition and a petition for leave to file a successive postconviction petition. *Id.* ¶ 23. The successive

postconviction petition raised a challenge to his sentence as a *de facto* life sentence under the eighth amendment pursuant to *Miller*. *Id.*

¶ 17    The trial court denied the defendant's petition for leave to file a successive postconviction, finding his claims were frivolous as he would be unable to establish prejudice because he was not sentenced to mandatory life without the possibility of parole in violation of *Miller*. *Id*. ¶ 26. The defendant appealed to this court, conceding that he was eligible for day-for-day credit because he was sentenced in 1998, before the truth-in-sentencing statute was validly enacted, and thus was scheduled to be released from prison on September 20, 2034, at the age of 53. *Id.* ¶ 27. Nevertheless, the defendant maintained that his sentence was a *de facto* life sentence in violation of *Miller*. *Id.*

¶ 18    This court rejected the defendant's argument and affirmed the trial court's denial of leave to file the successive postconviction petition, finding that while he established cause for failing to raise his claim sooner, he could not establish prejudice because he did not receive a *de facto* life sentence and therefore the requirements of *Miller* were inapplicable. *Id*. ¶ 28. In reaching its decision, this court determined that the availability of day-for-day sentencing credit was relevant to the analysis. *Id.* The supreme court allowed the defendant's petition for leave to appeal. *Id*. ¶ 29.

¶ 19    The supreme court agreed that the defendant established cause, because *Miller* set forth a new rule and a claim was unavailable to the defendant earlier and found the only relevant question was whether the defendant could establish the prejudice prong of the threshold test for bringing a successive petition. *Id.* ¶ 35.

¶ 20    Our supreme court decided that question in the negative, noting that the underlying murder and attempted murder offenses were committed in 1996, and defendant was sentenced in 1998 before the truth-in-sentencing statute was *validly* enacted. *Id*. ¶ 50. (Emphasis in original).[4] The court concluded that the defendant thus has an opportunity to demonstrate maturity and rehabilitation so that he only needs to serve 38 years of his aggregate 76-year sentence and held that he was not sentenced to the functional equivalent of a life sentence without the possibility of parole in violation of *Buffer*'s more-than-40-years pronouncement. *Id.*

¶ 21    In finding that defendant's sentence did not violate *Buffer*, the supreme court reasoned that while it was true that the trial court sentenced the defendant to a 76-year aggregate prison term, it was the legislature, through the statutory scheme it enacted, that determines how much of that sentence the person must serve. *Id.* ¶ 51. Additionally, the legislature offered the opportunity for early release by providing that "every person sentenced to imprisonment * * * shall serve the full term of a determinate sentence *less time credit for good behavior and shall then be released.*" (Emphasis added.) (730 ILCS 5/3-3-3(c) (West 1994)). *Id*. The court further noted that the statutory scheme applicable to the defendant required that a person receive one day of good conduct credit for each day of service in prison, and each day of credit must reduce by one day the inmate's period of incarceration set by the court (730 ILCS 5/3-6-3(a)(2); *id*. § 5-8-7(b)). *Id*. The

---

[4] In a footnote, the supreme court addressed the defendant's suggestion that the trial court intended to impose a *de facto* life sentence without parole in this case because the law in effect at the time of sentencing required him to serve 100% of his 76-year sentence. The court noted that by the date defendant was sentenced, two appellate court districts had already invalidated the truth-in-sentencing law (730 ILCS 5/3-6-3(a)(2)(ii) (West 1996)) which required 100% service of the sentence as facially unconstitutional under the single subject-rule. Further, the court noted that it affirmed that determination in *People v. Reedy*, 186 Ill. 2d 1 (1999), and that the General Assembly did not reenact the truth-in-sentencing law until after the defendant was sentenced, thus it did not apply to him, and the day-for-day, good conduct scheme applied. *Id.* ¶ 50, n.2.

court therefore found that the statutory scheme applicable to defendant mandated the application of day-for-day credit to determinate sentences; the day-for-day credit scheme was designed to encourage rehabilitation and enable an offender to be released after he served half of the determinate. *Id.* ¶¶ 51-52. Additionally, such credit allows a "predictable, fairly accurate assessment at the time of sentencing of the ultimate length of imprisonment," thus, an offender sentenced under the statutory scheme providing for day-for-day credit- "who conforms his conduct to the prison rules- can demonstrate growth and rehabilitation, thereby procuring his own release after serving half of the judicially imposed prison term." *Id.* ¶ 52.

¶ 22    The supreme court explicitly rejected the notion that good-conduct credit was not like parole because obeying prison rules did not demonstrate rehabilitation, likening the statutory scheme allowing for the opportunity of release short of a *de facto* life sentence to be on par with discretionary parole for a life sentence, which was specifically held to pass muster under the eighth amendment by the United States Supreme Court in *Montgomery*, 577 U.S. at 212. *Id.* ¶¶ 53-54. The court also found that its conclusion was consistent with its prior decisions where it considered a juvenile defendant's earliest opportunity for release in assessing whether a *de facto* life sentence had been imposed.[5] *Id.* ¶ 54. It also rejected the notion that such good conduct credit was uncertain, noting that it provided more certainty and protection against arbitrariness than a discretionary parole sentence. *Id.* ¶ 57.

¶ 23    The supreme court concluded that the statutory good-conduct scheme applicable to the defendant's sentence provided him with "some meaningful opportunity to obtain release based on

---

[5] The cases referenced were *People v. Reyes*, 2016 IL 119271, and *People v. Patterson*, 2014 IL 115102.

demonstrated maturity and rehabilitation" before he spends more than 40 years in prison, which was determined in *Buffer* to be the line for a *de facto* life sentence "based on an extrapolation from the legislative determination." *Id.* ¶ 65. Accordingly, the court held that the defendant's sentence, which offered an opportunity for release after serving 38 years in prison, was not a de facto life sentence in violation of the eighth amendment.[6] *Id.*

¶ 24    We now turn our attention to defendant's contention in the case at bar that his aggregate 68-year sentence violates *Buffer*. The record indicates that defendant committed the offenses in March 1998, prior to the initial enactment of the truth-in-sentencing law, and was sentenced on March 4, 1999, which was prior to the valid reenactment of the truth-in-sentencing law in 2000, thus he was subject to the day-for-day good-conduct credit sentencing scheme. Defendant acknowledges in his brief that he was eligible for day-for-day credit and that the trial court indicated that his sentence was to be served with day-for-day credit. Applying the day-for-day credit to defendant's 68-year sentence, we find that he would have the opportunity for release after serving 34 years, which is not the functional equivalent of a life without parole sentence. As 34 years is less than the 40-year line for a *de facto* life sentence as determined by *Buffer*, we find that defendant's sentence does not violate the eighth amendment and conclude that defendant's contention is without merit under *Dorsey*. *Dorsey*, 2021 IL 123010, ¶ 65. Accordingly, the trial court did not err in summarily dismissing defendant's postconviction petition at the first stage on this basis because, taking the allegations as true, defendant's petition failed to state the arguable

---

[6] Defendant's proportionate penalties argument was deemed forfeited on the basis of *res judicata* as it was not raised in the appellate court.

basis of a claim that his sentence was a *de facto* life sentence that violated *Buffer* pursuant to the supreme court's decision in *Dorsey*. *People v. Allen*, 2015 IL 113135, ¶ 25

¶ 25    In the alternative, defendant also contends that the summary dismissal of his postconviction petition should be reversed because he stated an arguable basis of a claim that his 68-year aggregate prison term was grossly disproportionate under the proportionate penalties clause or the eighth amendment. He acknowledges in his brief that his postconviction petition did not expressly cite to the proportionate penalties clause, but references cases decided by this court, such as *Gipson*, 2015 IL App (1st) 122451, which address proportionate penalty arguments. Additionally, in his *pro se* petition for rehearing before this court he argued that his 68-year prison term, even served at 50% with the application of the day-for-day credit, may constitute an unconstitutional life sentence as applied to him because of the low life expectancy of an inmate incarcerated as a youth and his subsequent diagnosis of TTP, which further reduces his life expectancy even though he was diagnosed while incarcerated. He also points to his background as other factors that should have been considered at sentencing. Based on the particular facts of this case and liberally construing defendant's petition, we will construe defendant's citation to *Gipson* as a proportionate penalties clause argument. Our generous construction here is specific to the particular facts and circumstances of this case and should not be interpreted to generally permit a postconviction petitioner to meet his pleading requirements by simply citing cases without explanation.

¶ 26    At the first stage, the trial court evaluates the petition on its own without input from the parties. *People v. Morales*, 2014 IL App (2d) 121001, ¶ 47. Any petition deemed frivolous or patently without merit must be dismissed. *Id.* A petition is considered frivolous or patently without

merit where it has no arguable basis either in law or in fact in that it is "based on an indisputably meritless legal theory or fanciful factual allegations." *Id.* (citing *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). In the case of a constitutional claim, a *pro se* petitioner is not required to allege facts supporting all elements. *Id.* ¶ 48. *Pro se* petitions must be given a liberal construction and are to be viewed with a lenient eye, allowing borderline cases to proceed. *Id.* Because a *pro se* petitioner is likely unaware of the precise legal basis for his claim, the threshold for survival is low, a *pro se* petitioner need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Post-Conviction Hearing Act (Act). *Id.* We review *de novo* the dismissal of a postconviction petition at the first stage. *Id.*

¶ 27     We first note that our supreme court's decision in *Dorsey* does not prohibit defendant from challenging his sentence under the proportionate penalties clause as that decision did not reach the defendant's proportionate penalties argument because the court found that the claims were forfeited and barred by *res judicata* on the basis of the particular facts of that case. See *Dorsey*, 2021 IL 123010, ¶ 69. There are no such barriers here. Additionally, defendant's *pro se* postconviction petition was summarily dismissed without any consideration of a proportionate penalties clause challenge.

¶ 28     The proportionate penalties clause of the Illinois Constitution specifically provides that "[a]ll penalties shall be determined according to the seriousness of the offense *and with the objective of restoring the offender to useful citizenship*." (Emphasis added.) Ill. Const. 1970, art. I, § 11. Our supreme court has explained that this unique emphasis on rehabilitative potential provides greater protection than the eighth amendment does. *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41.

¶ 29    Here, defendant appears to argue that his sentence violates the proportionate penalties clause as applied to him because the trial court failed to adequately consider his youth and attendant circumstances pursuant to *Miller* and its progeny and that his sentence is disproportionate to his individual characteristics and the circumstances presented by this case.

¶ 30    A criminal sentence violates the proportionate penalties clause if the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 70 (citing *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller).* The proportionate penalties clause embodies our evolving standard of decency. *People v. Savage*, 2020 IL App (1st) 173135, ¶ 64 Part of this evolving standard is the idea that deterrence may have little to no place in sentencing children. *People v. Meneses*, 2022 IL App (1st) 191247, ¶ 19; *People v. Haynie*, 2020 IL App (1st) 172511, ¶ 34; *People v. Morris*, 2017 IL App (1st) 141117, ¶ 33; *Miller v. Alabama*, 567 U.S. 460, 472 (2012). The proportionate penalties clause provides greater protections than the eighth amendment does. *Meneses*, 2022 IL App (1st) 191247, ¶ 22; *Savage*, 2020 IL App (1st) 173135, ¶ 65.

¶ 31    It is undisputed in this case that defendant's aggregate 68-year sentence falls within the statutory guidelines for the offenses he was convicted of. In *Leon Miller*, the supreme court held that " '[w]hen the legislature has authorized a designated punishment for a specified crime, it must be regarded that its action represents the general moral ideas of the people, and the courts will not hold the punishment so authorized as either cruel and unusual, or not proportioned to the nature of the offense.' " *Leon Miller*, 202 Ill. 2d at 339 (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894)). Recognized as an exception, however, is a sentence that is so wholly disproportionate to the offense committed that it shocks the moral sense of the community. *Id.*

¶ 32    As noted above, defendant in this case was convicted of both murder and attempted murder in connection with a shooting incident that resulted in the death of one individual and the injury of another. The evidence presented at defendant's open guilty plea hearing established that then 15-year-old defendant and his 22-year-old codefendant drove by a group that was sitting on a porch and flashed gang signs at them. Codefendant, who was driving, turned the car around and drove back towards the group before he reached under the seat, passed a gun to defendant, and yelled for defendant to shoot them before they shot first. Defendant fired the gun, resulting in the death of Delosantos and the injury of Puente. Defendant's argument is that an arguable basis exists for a claim that his sentence violates the proportionate penalties clause as applied to him because the trial court failed to adequately consider his youth and attendant circumstances when sentencing him pursuant to *Miller* and its progeny. The proportionate penalties clause demands consideration of the defendant's character by sentencing him with the objective of restoring the defendant to useful citizenship, which is much broader than defendant's past conduct in committing the offense itself. See *Gipson*, 2015 IL App (1st) 122451, ¶ 72.

¶ 33    Here, we find defendant's penalty in this case to be disproportionate and shocking to the moral sense of the community because the trial court did not consider defendant's youth and attendant characteristics, as we now know them to be, and his rehabilitative potential. See *Savage*, 2020 IL App (1st) 173135, ¶ 75. Admittedly, these were serious offenses. However, numerous factors diminish the justification for the sentences received and demand reconsideration of the same. The evidence presented at the plea hearing reveals that the shooting was a split-second decision, directly influenced by the older codefendant, defendant's fellow gang member, who gave defendant the gun and demanded that he shoot. Defendant was only 15 years old at the time of the

offenses and 16 years old when he entered his open, non-negotiated guilty plea in the trial court. The record does not indicate whether a plea agreement was discussed with the State prior to defendant entering his plea. While the trial court noted that defendant was young, it emphasized that the victims were also young. In imposing defendant's sentences, the court cited the need for safety, deterrence, and the "abhorrent" nature of the offenses. Additionally, codefendant received a sentence of only 40 years. There was no motion to reconsider sentence filed on defendant's behalf, nor was a direct appeal taken. Defendant's sentencing occurred in 1999, many years before *Miller* and its progeny were decided. Consequently, the record does not indicate that the trial court considered defendant's youth and attendant characteristics, or his rehabilitative potential. Defendant's 68-year aggregate sentences seems more consistent with eliminating him instead of restoring him to useful citizenship. See *Gipson*, 2015 IL App (1st) 122451, ¶ 74.

¶ 34    The dissent acknowledges that "the proportionate penalties clause's emphasis on rehabilitative potential provides 'a limitation on penalties beyond those afforded by the eighth amendment,'" but also states that the trial court need not give greater weight to the possibility of rehabilitation to the seriousness of the offense. The dissent further believes that the trial court struck a balance between the gravity of the offense and defendant's potential for rehabilitation by sentencing him to day-for-day credit and further states that defendant's petition "includes no allegations to suggest otherwise." Respectfully, defendant's day-for-day credit was not discretionary by the trial court but was required under the sentencing scheme in effect at the time his guilty plea was entered, as noted above. Further, a defendant's *pro se* postconviction petition has a very low threshold to survive dismissal at the first stage of review. *People v. Allen*, 2015 IL 113135, ¶ 24. A petition may only be dismissed as frivolous or patently without merit only if the

petition has no arguable basis in either law or fact. *Id.* ¶ 25. It is at the second stage where the postconviction petition can be said to be at issue, with both sides engaged and represented by counsel. 725 ILCS 5/122-4, 122-5, 122-6 (West 2016); *People v. Tate*, 2012 IL 112214. Here, we have merely concluded that defendant's *pro se* petition sets forth the gist of a constitutional claim of violation of the proportionate penalties clause and have not decided the merits of such claim.

¶ 35 Accordingly, we conclude that where defendant's argument finds support in both the filed record and case law, it cannot be considered frivolous and patently without merit and therefore establishes the gist of a meritorious claim. *Id.* ¶ 76. To advance to the second stage, a petitioner need only state the gist of a constitutional violation, which may then be fleshed out in further proceedings. *Zumot*, 2021 IL App (1st) 191743, ¶ 30, (citing *People v. Tate*, 2012 IL 11214, ¶ 19). A postconviction petitioner need not set forth a claim in its entirety and need only present a limited amount of detail. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To require more would be at odds with the "gist" standard, since by definition, a gist of a claim is something less than a completely pled or fully stated claim. *Id.* at 245. The justification for this lenient standard is that a *pro se* petitioner will in all likelihood be unaware of the precise legal basis or the legal elements of his claim, and additionally unaware of certain facts that might be critical parts of a complete claim. *Id.*

¶ 36                                    CONCLUSION

¶ 37 In sum, we find that while defendant's *pro se* postconviction petition did not establish an eighth amendment violation pursuant to *Dorsey*, we do find that defendant's petition stated the gist of a claim that, as applied to him, his aggregate 68-year sentence imposed absent consideration of the *Miller* factors violated the proportionate penalties clause of the Illinois Constitution. This claim

has an arguable basis in law and finds support in the facts alleged in defendant's petition and in the trial court record. Whether defendant can make a substantial showing in support of his claim with the assistance of counsel is a consideration that is reserved for second-stage proceedings. We reverse the trial court's summary dismissal of defendant's petition and remand for second-stage proceedings.

¶ 38    Reversed and remanded.

¶ 39    JUSTICE MITCHELL, dissenting:

¶ 40    Is a 68-year sentence imposed on a juvenile for the murder of a 16-year-old and attempted murder of another man, and which is eligible for day-for-day credit, so wholly disproportionate such that it offends the moral sense of the community? Under the Illinois constitution, the answer to this question is "No," and thus I respectfully dissent. See Ill. Const. 1970 art. I, § 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.").

¶ 41    Samuel Quezada alleges that the trial judge failed to adequately consider his youth, attendant circumstances, and rehabilitative potential in violation of *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. As the majority acknowledges, however, Quezada did not receive a *de facto* life sentence of 40 years or longer because of his eligibility for day-for-day credit, providing him with a meaningful opportunity for release after 34 years. See *People v. Dorsey*, 2021 IL 123010, ¶ 65. Thus, *Miller* does not apply and Quezada's eighth amendment claim necessarily fails. The majority nonetheless remands Quezada's initial postconviction petition for second-stage proceedings on his claim that his sentence violates the proportionate penalties clause as applied to him.

¶ 42 Even if we assume that Quezada did not waive this claim by entering a blind guilty plea,[7] what about Quezada's 68-year sentence for murder and attempted murder is "so wholly disproportionate as to shock the moral sense of the community"? *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*)). The trial court imposed Quezada's sentence within the statutory guidelines, which reflect "the general moral ideas of the people" and which we should not construe "as either cruel or unusual, or not proportioned to the nature of the offense." *Id.* at 339 (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894)). When compared to sentences of equal and longer length imposed on juveniles for similar offenses, which we have held do not violate the proportionate penalties clause, there is nothing shocking about Quezada's sentence. See, *e.g.*, *People v. Thornton*, 2022 IL App (1st) 170677-B, ¶ 35 (70-year sentence, with day-for-day credit, imposed on 17-year-old for murder); *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 148 ("[W]e cannot say that a 40-year sentence for a 17-year-old who committed a premeditated, gangland-style execution shocks the moral sense of the community."); *People v. Pearson*, 2018 IL App (1st) 142819, ¶ 54 (50-sentence imposed on 15-year-old for attempted murder, with a firearm enhancement, and attempted armed robbery).

¶ 43 Moreover, Quezada's defense counsel specifically argued at sentencing that Quezada should be treated differently than an adult because of his age when he committed the offense. In determining the sentence, the trial court expressly weighed Quezada's age while also considering the youth of his dead victim:

---

[7] A knowing and voluntary plea waives constitutional claims. See *People v. Aceituno*, 2022 IL App (1st) 172116, ¶¶ 46-48, 58; see also *People v. Jones*, 2021 IL 126432, ¶¶ 20-21.

"THE COURT: I remember the facts of the case clearly. *** I know it is gangs. I know they're young, but the motivation to commit this type of violence against others is in many ways beyond my comprehension.

\* \* \*

[W]hen I hear about your potential and your opportunity to be something different than what I believe you are today, I accept that but I also weigh that against the fact that [the victim] will never have the opportunity to fulfill the potential that he certainly had and to be a comfort to his family and friends.

\* \* \*

Mr. Quezada, you can stand up, you were the shooter. You were young but so was the individual that you shot."

Although the proportionate penalties clause's emphasis on rehabilitative potential provides "a limitation on penalties beyond those afforded by the eighth amendment," *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41, the trial court need not give greater weight to the possibility of rehabilitation than to the seriousness of the offense, *People v. Huddleston*, 212 Ill. 2d 107, 129 (2004); *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007). Here, the record reflects that the trial court struck a balance between the gravity of the offense and his potential for rehabilitation—particularly given that the day-for-day good credit scheme encourages rehabilitation by permitting an offender's release after serving one-half of the determinate sentence. *Dorsey*, 2021 IL 123010, ¶ 52. Quezada's petition includes no allegations to suggest otherwise.

¶ 44    Accordingly, I would affirm the trial court's summary dismissal of Quezada's postconviction petition because it presents no basis in law or fact to challenge his sentence under

either the eighth amendment of the U.S. Constitution or the proportionate penalties clause of the

Illinois constitution.